HOES, and MARY, his wife, and HAGER, and ANNA, his wife, Appellants, *vs.* JOHN M. VAN HOSEN, Respondent.

The general rule is that the personal estate of a testator is the primary fund for the payment of legacies, and a testator is presumed to act upon this legal doctrine, unless a contrary intent is distinctly manifested by the terms and provisions of the will.

Where the personal estate is not in terms exonerated, and is not specifically given away by the will, it will be deemed the primary fund for the payment of legacies notwithstanding such legacies, by the terms of the will, are expressly charged upon the persons to whom the real estate is devised. The charge upon the devisees in such a case will be deemed in aid, and not in exoneration of the primary fund.

A testator gave to his wife the use of his real and personal estate during her widowhood; to two of his sons he devised the reversionary interest in his real estate, and directed them to pay legacies to his other son and to his daughters; but made no disposition of the reversionary interest in the personal estate; *held*, that such reversionary interest in the personal estate was the primary fund for the payment of the legacies.

This was an appeal by the complainants from a decree of the Chancellor, reversing that of the Vice Chancellor of the third Circuit, and directing the complainants bill to be dismissed with costs. The facts are sufficiently stated in the opinion of Chief Justice Jewett. (*See also*, 1 *Barbour, Ch. Rep.* 380.)

*H. Hogeboom,* for appellants.

*A. L. Jordan,* for respondent.

JEWETT, CH. J. The testator, on the 17th day of September, 1817, duly made his last will and testament, and on the same day died, leaving a widow and six children. At the time of his death, his property consisted of a farm of about 190 acres, worth about $9,500, of farming utensils and stock thereon, worth about $848 06, of choses in action and other personal estate, worth about $5,827 65. At the time of his death,

his debts owing by him amounted to about $144 55, and his funeral charges to $59 33.

To his two sons John and George, he devised and bequeathed all of his farm of land, with all thereto belonging, with his house, barn, &c., their heirs and assigns forever, share and share alike, with all of his farming utensils, and also, all his stock of whatever nature then on his farm; to his son Lambert he bequeathed, three thousand dollars, to be paid within one year after his decease, by his two sons, John and George; to each of his three daughters, Mary, (called Dorothe,) Anna and Jane, he bequeathed the sum of seven hundred dollars, also to be paid by his said two sons, John and George, as they severally should become of age.

To his wife Dorothe, he gave the use and income of all his *estate during her widowhood.* He appointed his wife executrix, his son John and his brother George executors, and made no other disposition of his personal estate.

The two executors proved the will and took out letters testamentary. The executrix did not qualify as such; George, one of the executors, died in 1822, leaving the son John sole executor, who soon after the testator's death made an agreement with the widow, by which he took the possession of the entire estate and used and occupied the same, for his own benefit and that of his brother George, until the year 1825, when he purchased his brother's interest in said estate.

The debts and legacies were paid by John out of the testator's personal estate. The widow died in 1834.

The complainants now claim an account of the reversionary interest in that part of the personal estate not specifically bequeathed to the two sons John and George, and payment of their shares therein as next of kin of the testator.

This claim is resisted upon two grounds, first, on the ground, that such reversionary interest was the primary fund for the payment of the legacies, after the debts were paid and by which it was exhausted. Second, on the ground that Maria before her marriage and Hager after his marriage with Anna, respectively released their claims to the defendant.

16

As to the first ground : It is a rule in the construction of wills that the intention of the testator should govern in all cases, except where the rule of law overrules the intention ; and this intention, it is well settled, must be collected from the whole of the will or writing itself. (*Bradley* vs. *Leppingwell,* 3 *Burr.* 1541; *Evans* vs. *Astley,* 3 *Burr.* 1581.) The personal estate of the testator is deemed the natural and primary fund to be first applied in discharge of his personal debts and general legacies, (*Toller L. of Ex.* 417.) and the testator is presumed to act upon this legal doctrine, until he shows some other distinct and unequivocal intention. (1 *Story's. Eq.* § 573.) It is a rule also that, in the event of a deficiency of assets to pay the debts of the testator, payable out of the personal assets, and discharge the specific and general legacies, the latter must abate in proportion to the deficiency, or be lost altogether, unless the real estate is charged with their payment.

The old law was, that the personal estate could not be exempted from the payment of debts and legacies without express words; but this is now admitted not to be necessary ; and it is sufficient, if there appears upon the will an " evident demonstration," a " plain intention," or a "necessary implication." (*Gittins* vs. *Steele,* 1 *Swanst.* 25; *Watson* vs. *Brickwood,* 9 *Vesey, Jr.,* 447 ; *Booth* vs. *Blundell,* 1 *Meriv.* 192, *S. C.* 19 *Vesey, Jr.,* 517 ; *Kelsey* vs. *Deyo,* 3 *Cow.* 133 ; *Tole* vs. *Hardy,* 6 *Cow.* 333 ; *Glen* vs. *Fisher,* 6 *John, Ch.* 33 ; *Livingston* vs. *Newkirk,* 3 *John, Ch.* 319.) What shall constitute proof of such an intended exemption by the testator is not in many cases ascertainable upon abstract principles; but must depend upon circumstances—and different Judges have held different opinions. Lord Thurlow thought it was a point so slender and fine that he could not collect any certainty upon the question. (*Ancaster* vs. *Mayer,* 1 *Brown's Ch. R.* 462.) And Lord Eldon, (*in Booth* vs. *Blundell, Supra.*) remarks, " it is scarcely possible to find any two cases, in which the Court altogether agrees with itself ; there being hardly a single circumstance, regarded in one, as a ground of infer-

ence in favor of the intention suggested as belonging to that particular will, that is not in some others treated as a ground against that intention."

What then was the intention of the testator, plainly collec-lected from the whole will in respect to the fund out of which the legacies were expected or required to be paid? Was it, that these legacies should be paid by his sons, John and George *personally*, in consideration of the devise of the real estate and bequest of the farming utensils and stock on his farm in remainder after the death or re-marriage of his widow to them, in *exoneration* of the reversionary interest in the personal estate undisposed of by his will? Or was it that such devise and bequest to the two sons with directions to them to pay, should be in *aid* of the reversionary interest in that personal estate, and that that interest should be the primary fund for the payment of the legacies?

There is no express charge of the legacies upon the estate given to John and George *in exoneration* of the reversionary interest in the personal estate not specifically bequeathed; nor can any such charge be implied, if the testator is presumed to have acted upon the doctrine that his personal estate was the primary fund for the payment of his legacies: yet it is clear that the testator intended that the legacies should in no event fail or abate, and therefore, by his direction that John and George should pay such legacies, evidently in consideration of his bounty to them, he not only created a charge upon them personally, but in equity, a charge upon the estate bequeathed and devised to them.

The mere making of a provision for the payment of debts or legacies out of the real estate, does not discharge the personalty. There must be an intention not only to charge the realty, but to *exonerate* the personalty; not merely to supply another fund, but to substitute that fund for the property antecedently liable. Thus in numerous cases, it has been held that neither a charge of debts on the testator's lands *generally*, or on a specific portion of them, nor a devise upon trust for sale, however formally or anxiously framed, nor the crea-

tion of a term of years for the purpose of such charge, will *exonerate* the personalty. (*White* vs. *White,* 1 *Vernon* 43; *Bridgman* vs. *Dove,* 1 *Atk.* 103; *Lord Inchiquin* vs. *French,* 1 *Cox.* 1; *Hancox* vs. *Abbey,* 11 *Vesey,* 186; *Tower* vs. *Lord Rous,* 18 *Ves.* 132; *Ancaster* vs. *Mayer,* 1 *Brown, Ch. R.* 454, *Ram. on Assets, Ch.* 3, § 5; 2 *William's Exrs.* 2 *Am. Ed.* 1215.)

Nor is it material that the charge is imposed on the devisee in the terms of a condition, as where real estate is devised to A. he paying the debts and legacies or the like. (*Bridgman* vs. *Dove,* 3 *Atk.* 203; *Mead* vs. *Hide,* 2 *Vernon,* 120; *Watson* vs. *Brickwood,* 9 *Vesey, Jr.,* 447, *Roper on Leg.* 163.)

In all these cases, the charge upon the realty, or the condition that the devisee shall pay as directed, is deemed and taken to have been made in *aid* of the primary fund, and not in *exoneration* of it, unless there is an *absolute* disposition of all the personal estate of the testator; in such case, the intent of the testator to charge the realty in exoneration of the personalty, is sufficiently manifested. In this case there was no disposition of the *reversionary* interest in more than $5,000 value of the personal estate.

I am satisfied, therefore, upon this branch of the defence, that the Chancellor came to a correct conclusion.

It is however insisted, that assuming that the legacies were to be paid out of the reversionary interest in the personal estate not bequeathed to the devisees, the Chancellor, instead of dismissing the bill, should have directed an account of this property to be taken to ascertain whether the debts and legacies would exhaust it—in the event that it should be held that the releases were inoperative beyond the amount of the legacies of the releasors. If the case was such that it could not be seen, without a reference, that they would exhaust it, an account in the event mentioned should be taken. But there is no room for any doubt upon that question. The widow died in June, 1834. Until then she was entitled to the use and income of the personal estate. The reversionary interest of that portion not specifically bequeathed to John and George,

amounted to $5,827,65.   The legacy to Lambert alone, with interest. after the expiration of one year from the death of the testator, to which the defendant would be entitled to be allowed, without any account of the three legacies to the daughters, of $2,100 in the aggregate, and without the debts and the interest on each from the time the same were payable, greatly exceeds the value of that personal estate. . There is not the least ground appearing in the case rendering it proper or necessary for such reference.

Being entirely satisfied of the soundness of the defence upon the first ground, I do not deem it necessary to examine the other.   I am of opinion that the decree of the Chancellor should be affirmed.

Decree affirmed.