In the Matter of the Judicial Settlement of the Account of Proceedings of BRIDGET GOETZ and Others, as Executors of and Trustees under the Last Will and Testament of IGNACE GOETZ, Deceased.

BRIDGET GOETZ and ELIZA J. GOETZ, Individually and as Executors of and Trustees under the Last Will and Testament of IGNACE GOETZ, Deceased, Appellants; ALFRED E. GOETZ, Individually and as Executor of and Trustee under the Last Will and Testament of IGNACE GOETZ, Deceased, and Others, Respondents.

*Will — gift of all personal property to the testator's widow, held to require legacies subsequently given by the will to be discharged from the real property — debts to be paid from the personal estate.*

A testator left surviving him a wife and several children. The will first directed that the testator's debts be paid, and then provided: "*Second.* I give and bequeath all my personal property, including furniture, plate and household effects, to my beloved wife Bridget, which together with the other provisions of this my Will for her benefit shall be in lieu of and in bar of all claim of dower in my estate." By the 3d clause the testator gave his executors $500 in trust for the use and benefit of one of his sons with remainder, if any, to the testator's other children. By the 4th clause he directed his executors to pay another son $17 per month during his natural life. By the 5th clause he devised his residuary estate to his executors in trust, to apply one-third of the rents, issues and profits thereof to the use of his wife, and the balance thereof to the use of certain of his children. He directed that, at the expiration of the trust term, the executors should convert the trust property into money, pay the sum of $7,000 to his wife and divide the balance among the other *cestui qui trustent.*

The testator left personal estate amounting to $10,795.15, besides his furniture, plate and household effects, and it appeared that the value of the widow's dower in the testator's real property was considerably in excess of the value of the provisions made for her benefit in the will.

*Held,* that it was the testator's intent to give to his wife the whole of his personal estate without any diminution on account of the legacies contained in the 3d and 4th clauses of the will, and that the testator intended to charge the payment of those legacies upon his real property;

That it was, however, the testator's intention that his debts should be paid out of the personal property.

APPEAL by Bridget Goetz and Eliza J. Goetz, individually and as executors of and trustees under the last will and testament of

Ignace Goetz, deceased, from a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 19th day of November, 1901, settling the accounts of the executors and trustees under the will of Ignace Goetz, and construing certain provisions of the will of said deceased.

The appeal is taken from the whole account as filed, but the appellants state that the question they wish determined is the interpretation of the will which has been determined adversely to the widow in the court below.

Ignace Goetz duly executed his will on May 28, 1891, at a time when he had a family consisting of his wife, Bridget, and three daughters and six sons. Two of his sons, Edward Paul and Francis Xavier, were minors. Another son, Julius, was insane, and another, Louis Eugene, was evidently improvident. The testator died January 15, 1892, leaving him surviving the family above mentioned, and leaving both real and personal property. The latter amounting to $10,795.15, besides the furniture, plate and household effects mentioned in the 2d clause of the will. The will of the testator first directed that his debts be paid ; then the following : .

"*Second.* I give and bequeath all my personal property including furniture, plate and household effects to my beloved wife Bridget, which together with the other provisions of this my Will for her benefit shall be in lieu of and in bar of all claim of dower in my estate.

"*Third.* I give to my executors hereinafter named, the sum of five hundred dollars, in trust for the use and benefit at their discretion, of my son Julius Augustus, now insane, if in the judgment of my executors it may be necessary to contribute to his support and maintenance. In case of the death of the said Julius Augustus, I give the said sum of five hundred dollars, unless disposed of by my executors, to my children who may survive him, share and share alike.

"*Fourth.* I give to my son Louis Eugene for and during the term of his natural life the sum of seventeen dollars per month to be paid to him by my executors hereinafter named.

"*Fifth.* I give, devise and bequeath all the rest, residue and remainder of the property and estate of which I shall die seized

FIRST DEPARTMENT, APRIL TERM, 1902.     [Vol. 71.

unto my executors in trust to collect and receive the rents, issues and profits thereof and apply one-third of the same to the use of my wife Bridget, and the balance thereof to the use of my children named as follows : Alfred Edward, Eliza Josephine, Charles Francis, Emily Augusta, Mary Frances, Edward Paul and John Francis Xavier, equally share and share alike until both of my minor children, Edward Paul and John Francis Xavier, shall become of age or until the death of both of them before attaining majority.

" When my said minor children become of age or at their death before attaining majority, I direct that the said trust shall cease, determine and be at an end, and I authorize and direct my executors hereinafter named to sell and convert all of said property and estate so held in trust into money and divide the proceeds thereof as follows :

" (a) I give to my beloved wife Bridget the sum of seven thousand dollars thereof, and to my daughter Mary Frances the sum of one thousand dollars thereof.

" (b) I give the balance thereof to my children named as follows : Alfred Edward, Eliza Josephine, Charles Francis, Emily Augusta, Mary Frances, Edward Paul, John Francis Xavier, equally share and share alike.

" In the event of the death of either of my children last mentioned without leaving issue them surviving, I give the share of the one so dying to the other children named in this paragraph. In the event of the death of either of my children named in this paragraph leaving lawful issue them surviving, I give the share of the one so dying to such lawful issue share and share alike.

" In the event that any of the beneficiaries named in this my Will shall contest this Will, the share or shares of the one or more so contesting, I give to the others not contesting, equally.

" *Sixth.* I give to my executors hereinafter named full and absolute power and authority to sell, mortgage or lease any and all of my real estate at any time they shall deem it advisable for the best interests of my estate and to execute, acknowledge and deliver all deeds, bonds and mortgages or other instruments that may be necessary in the management of my estate."

Then follows the clause appointing his executors and the due execution of the instrument.

*William H. Hamilton,* for the appellants.

*Thomas F. Byrne,* for the respondents.

HATCH, J.:

The learned surrogate held, construing the will of the testator, that nothing passed thereunder to the widow by the 2d clause except the furniture, plate and household effects of the testator; that the debts in the 1st clause and the money legacies contained in the 3d and 4th clauses of the will were charges upon the personalty. It is the construction of these clauses that presents the only question necessary to be determined upon this appeal.

The consideration of a few general principles which are uniformly applied in the construction of wills seems to present a solution of the present question and enforce the will according to the intent of the testator. It is a general rule that the personal estate of a testator is the primary fund for the payment of debts and legacies in the absence of an express provision making them a charge upon the testator's real property, or in the absence of an intent, to be gathered from the language used and the scheme of the will as a whole, to show otherwise. (*Hoes* v. *Van Hoesen,* 1 N. Y. 120.)

If we construe the language of the 2d clause of the will literally, the testator gives thereby to the widow all of his personal property. The words which follow in this clause are not words of limitation nor can their literal significance be used to cut down the bequest contained therein. The language is a gift of the whole, including furniture, plate and household effects. "Including" is not a word of limitation, rather is it a word of enlargement, and in ordinary signification implies that something else has been given beyond the general language which precedes it. Neither is it a word of enumeration of the property which would pass by the express terms of the language of gift. No language could be used which would express the gift of a whole stronger in terms than that of which the testator made use. He could not give more than all of his property and that is what he assumed to give in terms. The enumeration of special property is preceded by the statement that such property is included in the gift of all his personal estate. There is nothing, therefore, in the language of this clause which can be construed as words of limitation upon the bequest contained

therein. In addition to this, the further provision is that the abso-
lute and complete bequest shall be in lieu of and in bar of all claim of
dower in the testator's estate. The gift, therefore, is to be construed
as being founded upon a valuable consideration, as the surrender of
the dower interest is made a condition of the bequest. It is evi-
dent, therefore, that so far as the express language of the will is
concerned the gift is absolute of all his personal property, includ-
ing furniture, plate and household effects, and in consideration of
such bequest dower right is to be released. So far, therefore, as the
express language of this clause of the will is concerned it clearly
excludes a construction which would limit the estate bequeathed,
and so far as the testator's intent can be gathered from the language
which he has used, it is clear that he understood that he was giving
to his wife the whole of his personal estate, subject to no diminu-
tion by legacies charged thereon. Such a clause is to be liberally
construed in favor of the widow. (*Moffett* v. *Elmendorf*, 152 N.
Y. 475; *Thurber* v. *Chambers*, 66 id. 42.) As the gift is founded
upon the exclusion of dower such fact is also to be taken into con-
sideration, and the provision thus made is to be regarded as the
dominant provision, and all other clauses are to be made subordinate
thereto if the will, as a whole, can be supported. (*Stimson* v.
*Vroman*, 99 N. Y. 74; *Roseboom* v. *Roseboom*, 81 id. 356.)

This clause of the will, therefore, may not be cut down or limited
by subsequent provision unless the intent so to do is expressed in
decisive and unqualified terms. Such is the effect and the language
of the authorities we have cited. The effect of the provisions direct-
ing the payment of legacies contained in the 3d and 4th clauses
would ordinarily be construed as constituting a charge upon the per-
sonal estate of the testator as there is no language in the will which
expressly makes them a charge upon the real property. Such con-
struction, however, is not permissible under the terms of the present
will for the reasons already assigned, and for the further reason that
it appears that the value of the widow's dower in the real property
left by the testator was considerably in excess of the value of the
bequest therein and of her rights in the personal estate.

The testator evidently bore towards his wife much love and affec-
tion, and expresses the same in the 2d clause of his will. It is fair
to presume, therefore, that he intended to make his wife a fair and

just provision in the distribution of his property. It would be opposed to such relation to presume that he intended to make his gift to the wife delusive and in fact worth much less than though he had made no provision for her at all. On the contrary, such considerations are pertinent matters of inquiry as bearing upon the intent of the testator. If we adopt the construction of the learned surrogate in the present case we not only have to conclude that the testator intended to deprive his wife of her rightful interest in his property, but also to cut down and limit language which corresponds with such intent and do violence thereto which the literal and ordinary signification of the words do not permit. We think, therefore, that it was the intent of the testator and the scheme of the will, as well as his express language, to give to his wife the whole of the personal estate of the testator without any diminution on account of the subsequent legacies, and that by fair construction the testator intended to charge their payment upon his real property.

We do not think, however, that this construction should obtain as to the debts. The clause in the will which directs their payment precedes the bequest to the wife of all the personal estate. Debts are, of course, payable out of the personalty where it is sufficient for the purpose, and resort may not be had to the real estate until the personal estate is exhausted; and proof is required to be made of such fact in a proceeding to charge payment of debts upon the real property. (Code Civ. Proc. § 2759, subd. 5.) And by the petition in such proceeding, if presented by the executor or administrator, it is required to state the amount of the personal property which has come to his hands and the disposition made of the same. (Id. § 2752, subd. 4.) As the first direction in the will was to pay debts, and as we have already seen that the personal estate is the primary fund for their payment, we think it was the intent of the testator to give to the wife all of the personal estate that survived the administration of the same, and that the debts are a proper charge thereon.

For the reasons already assigned, however, the testator's intent was evidently otherwise so far as the legacies to which we have heretofore made reference are concerned.

If these views are sound, it follows that the decree of the surrogate should be reversed and a decree entered which shall correspond

to the views expressed in this opinion, with costs to the appellant payable out of the estate.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and McLAUGHLIN, JJ., concurred.

Decree reversed, and decree entered as directed in opinion, with costs to appellant payable out of the estate.