In the Matter of an Application for a Judicial Construction of the Last Will and Testament of CHARLES J. VERT, Deceased.

Surrogate's Court, Clinton County, December 28, 1925.

Wills — construction — following specific legacies testator provided that all preceding legacies should be paid in full — residuary estate was given in trust for three lives in being with remainder over — at time of execution, personal property was sufficient to pay legacies — testator held same real property at time of death as at time of execution of will — executor was given power to sell real property — legacies were not charge on real property — legacies following provision for full payment must be paid pro rata from personalty remaining — trust is void under Real Property Law, § 42, and Personal Property Law, § 11 — trust may be severed from will — remaindermen take immediately — provision that transfer tax should be paid from residuary estate is legal.

Certain legacies in the testator's will, following a provision that all prior legacies should be paid in full, do not become a charge on the real property of the testator, although the executor was given power to sell and convey all property

for the purpose of carrying out the provisions of the will, since it appears that at the time of the execution of the will the testator had sufficient personal property to pay all legacies, and that the real property which he owned at the time of his death was the same as that owned by him at the time of the execution of the will.

Accordingly, said legacies must be paid *pro rata* from the balance of the personal property remaining after the payment of the legacies which the testator directed to be paid in full.

A trust, created by the residuary clause of the will for the benefit of three lives in being with remainder over, is illegal and void under section 42 of the Real Property Law and section 11 of the Personal Property Law, but the invalid trust may be severed from the will without destroying the general plan of the testator and since it furthers his evident intention of not dying intestate as to any of his property, and, therefore, the remaindermen, who would have had a vested remainder if the trust had been valid, will take immediately.

A provision in the will, directing the payment of all transfer taxes on the entire estate out of the residuary estate, is legal and should be followed.

PROCEEDING for the construction of a will.

*Feinberg & Jerry,* for the executor and trustee, petitioner.

*John H. Booth,* for the Young Men's Christian Association of Plattsburgh, N. Y., and others.

*Robert C. Booth,* for the Plattsburgh Public Library.

HARRINGTON, S.   In the first nine paragraphs of his will the deceased devised $72,000 in cash to various legatees, together with other personal property.   Paragraph " tenth " of the will reads as follows:

"*Tenth.* For reasons sufficient to myself, no mention is made of any other relatives, near or far.

" It is my will, and I so direct, that the foregoing paragraphs of my Will take precedence over those that follow, and shall be carried out in full and as promptly as may be after this Will takes effect, without regard to the effect on the provisions following."

Paragraphs " eleventh," " twelfth " and " thirteenth " of said will provide for the establishment of three trust funds totaling $50,000, for the benefit of Macomb Park and the Children's Home of Northern New York, both in the city of Plattsburgh, N. Y., and to assist worthy and needy students of Clinton county to a college education.

Paragraphs " fifteenth " and " sixteenth " of said will are as follows:

"*Fifteenth.*   All the rest, residue and remainder of my estate, both real, personal and mixed, of whatsoever name or nature, and wheresoever situated or located, I give, devise and bequeath to the Merchants National Bank of Plattsburgh, New York, in trust, however, to convert the same into cash, and to invest and keep

the same invested, and pay over the income therefrom semi-annually, to my sisters, Ella J. Hydorn and Harriet V. Francisco, and my brother, Edmund J. Vert, during their joint lives, share and share alike. On the death of either, the survivor or survivors shall receive the whole of the income, until the last survivor shall have died. On the death of the survivor, it is my will, and I so direct, that the corpus of said fund shall be equally divided between the following institutions, to wit,— the Y. M. C. A., of Plattsburgh, New York, the First Presbyterian Church of Plattsburgh, New York, the First Presbyterian Church of Morristown, New York, the Young Women's League, of Plattsburgh, New York, the Physicians' Hospital, of Plattsburgh, New York, the Champlain Valley Hospital, of Plattsburgh, New York, the Plattsburgh Public Library, of Plattsburgh, New York, and the Samuel F. Vilas Home, of Plattsburgh, New York, to each an equal one-eighth part.

"*Sixteenth.* It is my will, and I so direct, that all transfer or inheritance taxes against my estate shall be paid from the property passing under the residuary clause of this will, if this is possible. This is simply my wish, well-knowing that these things must be taken care of regardless."

Paragraph " seventeenth " of said will gives the executor and trustee power to sell and convey any and all real, personal or mixed property of the deceased, for the purpose of carrying out the provisions of the will. The last paragraph appoints the Merchants National Bank of Plattsburgh, N. Y., as sole executor and trustee.

By a stipulation between the interested parties herein, it appears that the fair market value of the personal estate of the deceased on November 28, 1923, the date of the execution of the will, was approximately $160,000, and that the fair market value of his real property was approximately $16,000. The deceased died on October 27, 1924, and the inventory of his estate shows personal property of the appraised value of $125,000, and real property of the appraised value of $15,800. It is important to note that the deceased owned the same real property at the time of his decease as he did at the time of the execution of his will. The decrease in the value of his personal property was due to shrinkage in the value of various securities held by him between the date of the will and the date of his death. It also appears that the present actual value of the same securities listed in the inventory is much less than the appraised value thereof, so that the present value of the personal property of the deceased does not exceed $110,000, which is $12,000 less than the total cash legacies devised in the first thirteen paragraphs of decedent's will.

The questions arising in this proceeding are as follows: (1) As

there is not sufficient personal property to satisfy all the cash legacies in the first thirteen paragraphs of the will, are such legacies to be deemed a charge upon the real estate?

Whether a legacy is a charge upon real estate of the decedent is always a question of the testator's intention. The language of the will is the basis of the inquiry, but extrinsic circumstances which aid in the interpretation of that language to help disclose the actual intention may also be considered. (*Ely* v. *Megie*, 219 N. Y. 112, 127, and cases cited; *Carley* v. *Harper*, Id. 295, 301, and cases cited.)

The terms of the will in question do not specifically charge the payment of the several legacies upon the real estate of the decedent. By stipulation between the interested parties herein, it appears that at the time of the execution of the will the personal property of the decedent was more than sufficient to pay all the legacies. It further appears that the real estate owned by him at the time of the execution of the will was the same real estate owned by him at the time of his death. Under these circumstances, the law seems well settled that the payment of such legacies is not charged upon the real estate of the decedent. (*Hoes* v. *Van Hoesen*, 1 N. Y. 120; *Brill* v. *Wright*, 112 id. 129, 133; *McGoldrick* v. *Bodkin*, 140 App. Div. 196; *Matter of Rhodes*, 109 Misc. 406.)

Even though the representative of the estate is given the power to sell the real estate, as in this case, the intention of the testator to charge the payment of the legacies upon the real estate cannot be implied where the personalty at the time of the execution of the will was sufficient to satisfy all of the general legacies. (*Schmidt* v. *Limmer*, 91 App. Div. 360, 363.)

When the payment of the legacies is not expressly charged upon the real estate and the personalty is insufficient therefor, said legacies abate *pro rata*. (*McGoldrick* v. *Bodkin*, *supra*.)

There is more than sufficient personalty to pay all of the cash legacies in the first nine paragraphs of the will. As the will provides that these legacies are to be carried out in full without regard to the effect on the following provisions of the will, said legacies should be paid in full. The legacies mentioned in paragraphs " eleventh," " twelfth " and " thirteenth " of the will should be paid *pro rata* from the balance of the personal property remaining after paying the legacies above mentioned.

(2) What is the legal effect of paragraph " fifteenth " of the will, which directs that the residuary estate be converted into cash, a trust fund therefrom set up and the income thereon paid to three beneficiaries during their joint lives, with remainder over to certain religious and charitable institutions therein mentioned?

The trust estate would suspend absolute power of alienation for more than two lives in being at the creation of the trust, to wit, for three lives. It is, therefore, void. (Real Prop. Law, § 42; Pers. Prop. Law, § 11; *LaFarge* v. *Brown,* 31 App. Div. 542; *Stoiber* v. *Stoiber,* 40 id. 156, 161; *Whitefield* v. *Crissman,* 123 id. 233, 235; *Underwood* v. *Curtis,* 127 N. Y. 523.)

The trust estate being void, counsel for the executor and trustee contend that decedent died intestate as to his residuary estate. Opposing counsel argue that the void trust may be severed from the will without offending the general purpose of the decedent, and that the doctrine of acceleration of remainders should apply so that the residuary estate may be distributed at once to the remaindermen mentioned in said paragraph. I believe the weight of authority sustains the latter contention.

In construing a will, the court always endeavors to give effect to the intent of the testator, if the same is not in violation of any statute. In *Matter of Silsby* (229 N. Y. 396, 401, 402) the court said: " When the intention of a testator is reasonably clear, and it is not in violation of any statute, it must be enforced. (*Cammann* v. *Bailey,* 210 N. Y. 19.) It was said by Judge POUND, now of this court, in *Baker* v. *Gerow* (126 N. Y. Supp. 277): ' In construing a will it has been repeatedly held that the object of the courts is to ascertain, not the intention simply, but the expressed intention, of the testator, *i. e.,* the intention which the will itself, either expressly or by implication, declares. In other words, it is the duty of the court to ascertain the intention of the testator from the words he has used, and to ascertain and give effect to the legal consequences of that intention when ascertained.' "

It is also important to note that the court should consider the effect of intestacy, as bearing on the question of decedent's intent. In *Kalish* v. *Kalish* (166 N. Y. 368, 374) the court considers the effect of intestacy and concludes that the direct furtherance of the testator's plan could only be had by eliminating the void intermediate trust and upholding the other parts of the will. In the case at bar, if intestacy is adjudged as to the residuary estate, some of the decedent's next of kin will receive a share therein who are not legatees under the will. I believe this would be directly contrary to decedent's intent, as expressed in paragraph " tenth " of the will, wherein he said: " For reasons sufficient to myself, no mention is made of any other relatives, near or far." The beneficiaries of this trust fund are also legatees in the preceding paragraphs of the will. In no event can they receive the benefit of the trust fund during their lives, as the same is void. The acceleration of the remainder limited on this void trust will merely prevent

them from receiving any part of this fund.  They will still receive the substantial legacies bequeathed to them.  The ultimate remaindermen whom the decedent designated will receive at this time the estate which decedent directed they should receive at the termination of the trust.  Such a construction would seem more likely to carry out the intent of the decedent than would occur by declaring intestacy, in order that the three beneficiaries of the estate might as next of kin receive part of the residuary estate, but in doing so, would allow other next of kin to share therein against the decedent's expressed direction.  Decedent was a lawyer with a very extensive practice.  The brief of counsel for the executor and trustee states that he was very strong in his likes and dislikes.  When, therefore, in paragraph " tenth " of his will, he provided that none of his relatives, other than those mentioned therein, should receive a part of his estate, it must be apparent that a construction of the will which would give part of his estate to such relatives would not be in accord with his intention.  It seems to be well established that whenever possible the courts will adopt such a construction as will prevent intestacy, either partial or total, in order to carry out the general purpose of the testator. ( *Kalish* v. *Kalish, supra.*)   If intestacy as to this residuary estate is to be declared, some reason for it must be given other than that of carrying out the intention of the decedent.

I do not find any legal objection in giving effect to the intention of the decedent as thus determined, by eliminating this void trust and accelerating the remainder limited thereon.  In fact, the statute law would seem to authorize such a construction.  (Real Prop. Law, § 58.)  The authorities in such cases seem to direct their inquiry *first*, as to whether the remainder limited on the void trust is vested or contingent, and *second*, whether the invalid trust can be severed from the will without destroying the general plan of the testator.

Section 40 of the Real Property Law defines vested and contingent remainders as follows: " It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates.  It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain."

In the case at bar the " precedent estate " is the void trust, and the " persons in being " are the religious and charitable institutions named as remaindermen.  The " persons to whom " and " the event on which " the future estate is to take effect are both certain, for the remaindermen are definitely named, and the time when they

shall take same is at the termination of the trust therein named. Hence, the remainder in the case at bar is unquestionably a vested one.

I believe the invalid trust can be severed from the will without destroying the general plan of the testator. In fact, there would seem to be no other way of carrying out such plan. The decedent has expressly stated that he did not wish any relatives, other than those mentioned in the will, to share in his estate. He has also stated that the religious and charitable institutions · mentioned in the residuary paragraph of his will should ultimately receive his residuary estate. These two purposes can only be carried out by severing the void trust and accelerating the remainder limited thereon. The construction thus placed upon this residuary paragraph of the will would seem to be in harmony with the weight of authority in similar cases. (*Matter of Berry*, 154 App. Div. 509; affd., without opinion, 209 N. Y. 540.) There the will created a trust for a definite period of five years with a valid vested remainder limited thereon. The court held that the void trust should be disregarded and the vested remainder given effect upon the death of the testator, instead of at the expiration of the five-year period, stating (at p. 511 of the opinion) as follows: " The enjoyment of this gift by the hospital is definitely fixed, *i. e.*, the expiration of five years, and the person to whom it was given was in being, definitely ascertained and competent to take at the time of the death of the testator. There is nothing uncertain about it. It was a vested remainder. A future estate is vested when there is a person in being who would have an immediate right to the possession of the property on the determination of all the intermediate or precedent estates. (Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 40.) The authorities, so far as I have been able to discover, are all to the effect that a vested gift, otherwise valid, will not fail merely because it is limited to take effect at the expiration of a trust which is void under the Statute of Perpetuities."

In *Kalish* v. *Kalish* (*supra*) the testator's widow was given a valid life estate, followed by a void trust, with valid remainders limited thereon. The court eliminated the void trust and held that the remainders should take effect at the conclusion of the life estate. stating (at pp. 374, 375 of the opinion) as follows: " It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. While recognizing the force of this truth courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established

in this State, that when the several parts of a will are so inter-
mingled or interdependent that the bad cannot be separated from
the good, the will must fail altogether; but when it is possible to
cut out the invalid provisions, so as to leave intact the parts that
are valid, and to preserve the general plan of the testator, such a
construction will be adopted as will prevent intestacy, either partial
or total, as the case may be.   This case seems to present a fair
opportunity for the application of the latter rule.   Here we are
not required to make a new will for the testator.   We have a valid
life estate, followed by a void intermediate trust for five years
succeeded by a valid ultimate trust and good remainders.   The
void intermediate trust is for the benefit of the same legatees who
take under the ultimate trust and remainders respectively.   The
excision of the void trust simply gives immediate effect to those
ulterior devises which under it were to be postponed for five years.
The same persons take in the same proportions as before.   By
way of recapitulation, we therefore, conclude that equity and the
decided cases concur in requiring us to hold that the invalid parts
of this will can be expunged without destroying the will as a whole,
or creating even partial intestacy.   The life estate with the power
of sale during its existence, subject to the widow's consent, can
stand.   The succeeding trust and its accompanying power of sale,
with its incidental directions regarding the occupation of the home-
stead, or its substitute, are declared void.   The ultimate trust and
the remainders are held valid to take effect at the conclusion of the
life estate."

It is true that in the above case  the ultimate remaindermen
were the same as the beneficiaries of the void trust.   But I believe
the court considered this fact only for the purpose of giving effect
to the testator's intention, and not for the purpose of limiting the
rule applied only to cases where the beneficiaries of the void trust
and the ultimate remaindermen were the same persons.   If the
remainder limited on the void trust is a valid one, and the court
believes that the testator intended that such remaindermen should
ultimately receive the trust fund, the rule applied by the court for
carrying out the testator's intention, when thus ascertained, should
be the same whether or not the beneficiaries of the void trust and
the ultimate remaindermen are the same persons.

In *Matter of Hitchcock* (222 N. Y. 57) the testatrix, after pro-
viding for certain legacies, directed in a codicil to her will that
said legacies should not be paid until the expiration of a period of
years therein mentioned.   In the following paragraph of said
codicil she gave all of her property to her executors in trust, to
hold until the time had expired for the distribution of the same, as

above mentioned. The court eliminated the trust as being void and directed the legacies to be paid immediately, as if no provision had been made for the postponement of the payment thereof, stating (at pp. 72 and 73 of the opinion) as follows: " The third and fourth paragraphs of the codicil provide for a trust for a period of years and not based upon lives, and it does not therein in terms dispose of the income. Such trust is invalid. The testatrix, however, was clear and definite in stating among whom her estate should ultimately be divided. No change whatever was made by the testatrix in either of the codicils to her will so far as it affects her general purpose in the ultimate disposition of her property. She had a full appreciation of her property and of those among whom she wanted. it divided. Her appreciation of her property and those having a claim upon her is shown not only by the general provisions of the will, but particularly by the fortieth paragraph of the original will in which she says: ' I have herein provided for all persons who have any claim on me by reason of consanguinity or affection whom I desire to participate in my estate.'  *  *  *

" We think that it clearly appears that the testatrix desired to have the money legacies paid and the residue of her estate divided as in the will provided, in any event, and that the trust was collateral to such desire. The lawful wishes of the testatrix would be defeated if the testamentary dispositions are not sustained."

For other cases where the invalid trust has been severed from the will and the remainder limited thereon accelerated to take effect at the death of the testator, see *Carrier* v. *Carrier* (226 N. Y. 114, 124, and cases cited); *Matter of Central Union Trust Company* (193 App. Div. 292, 296, 297, and cases cited; *Matter of Thaw* (182 id. 368, 373); *Matter of Kuhrasch* (124 Misc. 117). See, also, *Matter of Silsby* (*supra*, 402, 403), where the court recognizes the rule established in the above cases, but holds that in that case the same cannot be carried out, for the reason that the remainder was contingent instead of vested.

In the case at bar the residuary estate mentioned in paragraph " fifteenth " of the will should, therefore, be distributed to the remaindermen therein named.

(3) Shall the transfer taxes on the legacies mentioned in the first nine paragraphs of the will be paid by the legatees or from the funds in the residuary estate mentioned in paragraph " fifteenth? "

We do not have to speculate as to the intention of the testator on this matter. In paragraph " sixteenth " of the will he expressly stated that such transfer taxes should be paid from the property passing under the residuary clause of the will, if this was possible.

In other words, he has directed that the amount of such taxes be deducted from the property passing under the residuary clause of his will before the same should be distributed to the beneficiaries therein mentioned. He further directs in paragraph " fifteenth " of his will that all of the property in his residuary estate should first be converted into cash before distributing the same, and in paragraph " seventeenth " gives his executor and trustee full power and authority to sell and convey his real and personal estate in order to carry out the provisions of the will. Under these circumstances, it would seem immaterial whether we consider the residuary estate as consisting of real, personal or mixed property. In any event, it is directly charged with the payment of the transfer taxes on said legacies. It would seem that this rule would also apply even though it was held that the decedent died intestate as to the property passing under this residuary paragraph of his will. It is also the rule that expenses of administration must be paid from the residuary estate. (*Matter of Brooklyn Trust Co.,* 179 App. Div. 262; *Matter of Carnegie,* 203 id. 91; affd., without opinion, 236 N. Y. 517.) After paying transfer taxes and expenses of administration from the property in the residuary estate, the balance should be distributed to the religious and charitable institutions mentioned in paragraph " fifteenth " of the will, equally, share and share alike.

Submit decree according to this decision, upon two days' notice to the attorneys appearing herein. Costs to be allowed to all parties who have appeared herein (*Matter of Sayre,* 179 App. Div. 269; *Matter of Allen,* 111 Misc. 93, 139; affd., without opinion, 202 App. Div. 810; affd., without opinion on matter of costs, 236 N. Y. 503) to be paid out of the estate.