In addition to this the case of *Matter of Economical Printing Co.* (6 Am. Bank. Rep. 615) very distinctly and emphatically sustains this view, and the principle of such case was reaffirmed. (*Matter of Garcewich*, 115 Fed. Rep. 87.)

It is true that in the case of *Matter of Alexander Rodgers*, decided in the northern district of Illinois, and not reported, expressions are found which perhaps are somewhat in conflict with the views expressed by us and those sustained by the cases last cited. If the authorities, however, are to be regarded as in conflict upon this point, in the absence of a decision by the Supreme Court of the United States, we prefer to adopt those conclusions which are in accordance with the spirit of the decisions of our own State.

The judgment should be affirmed, with costs.

All concurred, except McLENNAN and WILLIAMS, JJ., dissenting.

Judgment affirmed, with costs.

---

SARAH J. TURNER and NATHAN OVEREND, as the Committee of the Person and Estate of WARREN MATHER, an Incompetent Person, Appellants, *v.* IDA F. MATHER and NICHOLAS PENDERGAST, as Administrators, etc., of CHARLES W. MATHER, Deceased, and Others, Respondents, Impleaded with Others.

*Annuities payable from a trust fund are general legacies — intent to charge debts upon real estate — it must be in exoneration, not merely in aid, of the personalty — proof required thereof — insufficiency of the personal property to pay the debts, when sufficient evidence of such intent.*

Annuities bequeathed by will and directed to be paid from a trust fund created out of the testator's personal estate are mere general legacies.

Where the annuitants claim that it was the intention of the testator to charge upon his real estate the payment of his debts and the money legacies

bequeathed by the will so far as might be necessary in order to leave enough of the personal estate to provide the funds out of which the annuities were to be created, it is incumbent upon the annuitants to show, not only an intent on the part of the testator to charge the real estate with the payment of the debts and money legacies, but an intent to exonerate the personal estate from their payment.

It is not sufficient for them to establish that it was the intention of the testator that the real estate should be used in aid of the personal estate for the payment of the debts and money legacies.

An intention to exonerate the personal property from the payment of the debts and money legacies need not be expressed in terms. It is sufficient if a clear intent on the part of the testator to accomplish that result can be gathered from the provisions of the will, supplemented by such extrinsic circumstances as may properly be considered. Such an intention may not be presumed merely from the use of formal words or the presence in a residuary clause of commonly employed phrases.

If an intention on the part of the testator to charge the payment of the debts and money legacies upon the real estate is sought to be inferred from the fact that the testator's personal estate was such that the testator must have known that the annuities could not be paid unless the debts and money legacies were paid out of the real estate, it must appear that the deficiency in the personal estate existed when the will was executed, and that it was then so great and obvious as to preclude any possible inference that the testator did not realize it or that he might have expected and intended, before his death, to remove the difficulty.

If the deficiency was such that the testator might have been unconscious of its existence, or was so dependent upon estimates of value that the testator might have considered his personal estate adequate to the burden imposed, or if he might reasonably expect to repair the deficiency before his death, the ground for inferring an intention to charge the payment of the debts and money legacies upon the real estate will disappear.

If the testator's debts are not charged by the will upon the testator's real estate, the assets are not to be marshaled in favor of the general legatee, so as to throw the burden of the debts upon lands which passed under a residuary devise.

APPEAL by the plaintiffs, Sarah J. Turner and another, as the committee of the person and estate of Warren Mather, an incompetent person, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Oneida on the 10th day of September, 1902, dismissing the complaint upon the merits.

*Jones, Townsend & Rudd,* for the appellants.

*Smith M. Lindsley* and *William S. Mackie* for the respondents, administrators and others.

_G. C. Morehouse,_ for the respondent Bushinger.

Judgment affirmed, with costs, on opinion of MERWIN, J., delivered at Special Term.

All concurred, except HISCOCK, J., not sitting; SPRING, J., concurring in result only.

The following is the opinion of MERWIN, J., delivered at Special Term:

MERWIN, J.:

Joshua Mather died in August, 1893, leaving a will, which was duly probated, and letters testamentary issued to Charles W. Mather, executor therein named, on September 11, 1893. In the 1st clause of the will the testator directed his executor to pay his debts and funeral expenses and the charges in reference to the settlement of his estate as he might deem proper.

In the 2d clause he gave $1,200 to the cemetery association for the benefit of his burial lot, which in the 3d clause he gave to his nephew, Charles W. Mather.

In the 4th clause he gave to the said Charles all his personal clothing and jewelry, and all his personal property in his house where he resided and all which might be on his homestead and in the buildings thereon at the date of his death.

In subsequent clauses prior to the 18th he gave general legacies, mainly to relatives, to the amount of $16,600.

In the 21st clause he gave to his nephew Charles, in trust, " such an amount of my personal estate as shall in his judgment be sufficient to yield a net income of ($200.00) two hundred dollars annually, payable quarterly, and he is to pay said sum of ($200.00) two hundred dollars in quarterly payments of ($50.00) fifty dollars to my nephew, Warren Mather, for and during his lifetime, but no payments to be made or paid to his estate for any unpaid interest at the date of his death, and the first installment of ($50.00) fifty dollars. of said income is to be paid to said Warren Mather three months from the date of my death."

The 18th, 19th and 20th clauses were similar in form to the 21st and provided annuities for two nieces and a nephew in the amount of $800 each.

By the 22d clause provision was made that, upon the death of any of the annuitants, the trust fund should go into the residuum of the estate and be disposed of as thereinafter stated.

By the 23d clause Charles W. was given the use during his life of "all the rest, residue, remainder and residuum of all my personal and real estate," and was to have the entire control and management as he might deem for the best interests of himself and the persons who under the will would be ultimately interested, and he could use it as he might deem best in any business, and repair and keep in proper condition the real estate, and he was authorized to make by will a disposition of the same as he might deem wise among his descendants in such proportions and amounts as he might deem proper. If such disposition was not made by Charles then the same was given " unto the persons whom he may leave as his next of kin and heirs at law at the date of his death in the same manner and proportions as if my said nephew Charles W. Mather had been absolute owner thereof at the date of his death and had died intestate and unmarried."

By the 24th clause Charles W. was appointed sole executor and authorized as such to sell and convey all real estate which the testator might own at the date of his death outside of the city of Utica.

Charles W. Mather died in November, 1899, intestate. He left a widow and children. He seems to have paid the annuities up to the time of his death. He had not, however, set apart any portion of the personal estate as a trust fund to provide for the annuities and no portion of the personal estate remained in his hands. The personal property amounted to about the sum of $77,000 and the debts exceeded this amount.

It may be inferred from the course of the trial that the personal property had been used toward the payment of debts. There are debts still outstanding. There has been no judicial settlement of the estate. This action was commenced in October, 1900.

The testator at the time of his death was the owner of real estate of the value of $200,000 and upwards, over and above incumbrances. This was mainly located in the city of Utica. There was a parcel in New York city, considerably incumbered, and one in Clifton Springs. These parcels have apparently been disposed of, and the amount realized, together with the personal property, did

not, as the evidence tends to show, exceed the amount of the indebtedness of the estate.

It is in substance claimed upon the part of the plaintiffs that it was the intention of the testator to charge upon his real estate the payment of his debts and money legacies, aside from the annuities, so far as might be necessary, in order to leave enough of the personal estate to provide the necessary funds for constituting the annuity trusts, and that, therefore, if such was the intention the personal estate having been used to pay debts and thus relieving the real estate, should be restored from the real estate by way of substitution or subrogation for the benefit of the annuitants.

The annuities in question were general legacies. (2 Wms. Exrs. [7th Am. ed.] 442, 672.) They were not charged upon the real estate. The trust fund was in terms to be constituted from the personal estate.

It is incumbent upon the plaintiffs to show, not only an intent to charge the real estate with the payment of the debts, but an intent to so charge as to exempt the personal. (3 Wms. Exrs. [7th Am. ed.] 159, 185, 189; *Kelsey* v. *Western,* 2 N. Y. 507, and cases cited; 2 Redf. Wills [3d ed.], *210, subd. 8.) The charge on the real must be in exoneration of the personal. If that is not done, the personal is the primary fund for the payment of debts.

In terms there is here no such exemption or exoneration. This, however, may be accomplished if such be the clear intent of the testator, to be gathered from the provisions of the will (*Taylor* v. *Dodd,* 58 N. Y. 335) supplemented by such extrinsic circumstances as may properly be considered.

This intention may not be presumed merely from the use of formal words, or the presence of commonly employed phrases (*Matter of City of Rochester,* 110 N. Y. 159), such as are in the residuary clause in the will under consideration.

In the case cited, it is said that inadequacy of personalty is not suggestive of an intent to charge the realty with the payment of debts, in view of the provisions of the Code* permitting a resort to the real estate by the creditors of the decedent.

The condition of a testator's estate at the time of making the will

---

* Code Civ. Proc. § 2749 *et seq.*— [REP.

has been sometimes considered a material circumstance. In this case it is the main reliance of the plaintiffs. Their claim is that the condition of the testator's personal estate was such that he must have known that the annuities could not be paid unless the debts were paid out of the real estate, and that, therefore, he must have so intended. This subject is discussed in *Briggs* v. *Carroll* (117 N. Y. 288, 292) and it is there said : " The deficiency must exist when the will is executed, and be so great and so obvious as to preclude any possible inference that the testator did not realize it, or that he may have expected and intended before his death to remove the difficulty. If the disparity, even though serious, is such that the testator might have been unconscious of its existence, or so dependent upon estimates of value that in the decedent's judgment it might have been adequate to the burden imposed, or such that he might reasonably expect to repair the deficiency before his death, the ground for inferring an intention to charge the land would disappear."

The testator died in August, 1893. The amount of his personal estate then is conceded to have been about $77,000. Whether it was the same at the time the will was made, which was January 3, 1893, does not very clearly appear. He was then apparently in good health, was the president of the bank and was in charge thereof, along with Charles W. Mather. They had for a long time been partners in the banking business up to the incorporation of the bank in 1890, and thereafter continued to be partners in business transactions until February 1, 1892, when the partnership was dissolved, Charles W. Mather transferring to the testator all his interest in the assets of the firm of a personal nature, and the testator agreeing to assume and pay all debts and liabilities of the partnership. At the same date, Charles W. seems to have conveyed to the testator all his interest in the New York city real estate, which I have no doubt was then deemed by them to be worth a large sum over and above the incumbrances. The debts existing against the testator at his death were mainly partnership liabilities or renewals of such, and it is not probable that the testator, when he took the transfer of the personal assets of the firm and assumed the debts, did not have enough firm property in his hands to pay them. Besides that, he had at the date of the will at least $50,000 of the

bank stock. He was, as the proofs show, a man of long and varied experience in business matters.

I am not satisfied from the evidence that at the date of the will the testator had any idea that his personal property was not sufficient to pay his debts and leave a large margin.

Having in view the considerations quoted from *Briggs* v. *Carroll* (*supra*), the condition of the property of testator at the date of the will, as far as appearing from the evidence, does not, I think, furnish support for the plaintiffs' contention. There are some provisions of the will that are suggestive. Charles W. was given the use during his life of the residue of the real and personal estate. He was authorized to sell and convey only the real estate outside of the city of Utica. What was in Utica was to remain under the care and management of Charles. He was authorized to will it to his descendants. Special provision was made for the contingency of Charles not making a will.

The annuitants were the brothers and sisters of Charles, and all older, and the testator might naturally expect that Charles would outlive the others. So that intentionally the testator held up the title of the Utica real estate to a period beyond the probable lives of the annuitants. In authorizing the sale of the real estate outside of the city of Utica, the testator recognized the contingency of such a sale being necessary or appropriate to the proper management of the estate and to meet the exigencies that might arise. He contemplated no such contingency as to the other real estate.

It seems to me that the provisions of the will above referred to rebut the idea of any intention to charge in any event the debts on the Utica real estate, and that this is the main, if not only, subject of controversy.

As to the real estate outside of the city of Utica, if it can be said that by reason of the authority to sell there may have been an intent to charge that with the payment of the debts or legacies, it was only in aid of the personal estate, and that is not enough. There must be a charge in exoneration of the personal. It must, therefore, I think, be held that the plaintiffs have not shown a basis for reaching the real estate or its proceeds on the ground of an intent to charge in exoneration of the personal.

If debts are not by the will charged upon the real estate, the assets are not marshalled in favor of the general legatees so as to throw the burden of the debts upon lands which pass under a residuary devise. (3 Wms. Exrs. [7th Am. ed.] 211, 214; 1 Story Eq. Juris. § 565; *Hoes* v. *Van Hoesen*, 1 N. Y. 120, 122; *Nagle* v. *McGinnis*, 49 How. Pr. 193; *Rogers* v. *Rogers*, 3 Wend. 503; *Gray* v. *Missionary Soc. of M. E. Church*, 2 N. Y. Supp. 878, 880.)

The foregoing considerations lead to the conclusion that the plaintiffs have not shown a right to reach the real estate in controversy for the purpose of obtaining by way of substitution or subrogation a fund for the payment of the annuity they represent.