---

(114 App. Div. 634)

MONROE v. MATHER–LOVELACE et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. EXECUTORS AND ADMINISTRATORS—SETTLEMENT BETWEEN HEIRS—ACTION FOR ACCOUNTING.

Where a settlement of the estate of a decedent was fairly made without fraud or overreaching, and was acceptable to all his next of kin, an action by an heir for an accounting is barred thereby.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 2293, 2294.]

2. SAME—LIMITATION OF ACTIONS.

Where one died in 1880, and a settlement was made between his heirs, and in 1889 a decree was entered judicially settling the accounts of the administrators, an action by an heir for an accounting of the estate commenced in 1901, after the death of some of the heirs, was barred by limitations.

3. SAME—RELEASE AND SATISFACTION BY HEIRS.

Where all the legatees of a decedent executed a release and satisfaction acknowledging receipt in full from the executor, and consenting to the entry of a decree judicially settling his account without notice, one of them could not thereafter maintain an action for an accounting of the decedent's estate.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 2293, 2294.]

4. JUDGMENT—PERSONS CONCLUDED.

In an action by legatees against an executor to have certain annuities declared a lien on the real estate of the decedent, other legatees, who were made defendants and failed to answer, were barred by a judgment dismissing the complaint on the merits.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1181]

Appeal from Special Term. Oneida County.

Action by Lucinda M. Monroe against Ida Mather-Lovelace and others. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Edwin H. Risley, for appellant.

S. H. Lindsley, for respondents Charles W. Mather's Adm'rs.

G. C. Morehouse, for respondent A. D. Mather & Co.'s Bank.

SPRING, J.   The action is in equity, primarily to obtain an accounting of the estates of three decedents, Asaph, Joshua, and Wesley Mather, and we will consider them chronologically.

Asaph Mather, a bachelor, died intestate in Utica April 8, 1880, leaving, him surviving, as his only next of kin two brothers, Joshua and Wesley, a sister, Lucinda M. Elliott, and three children of Seeley B. Mather, a deceased half brother of Asaph, and all these people were adults at this time.  Asaph and his brother Joshua for some time before the death of the former had been engaged as copartners in carrying on a banking office in Utica under the firm name and style of A. D. Mather & Co.   These brothers extended their copartnership to several pieces of real estate in Utica and elsewhere, the legal title whereof was principally in Asaph, but they were in fact equal owners.   Joshua evidently desired to continue the banking business after the death of Asaph.   His nephew, Charles W., a son of Wesley, had been employed in the bank for some time, and in 1880 they formed a copartnership in the banking company, continuing to use the name of A. D. Mather & Co.   In April, and very shortly after the death of Asaph, all the next of kin met with Joshua and Charles, and the latter, who was familiar with the affairs of the copartnership, presented an itemized account to them of all the property owned by Asaph, or in which he was a joint owner with his brother Joshua, accompanying the account with a statement of the value of each of these tracts of land.   All of these next of kin, after canvassing the situation, agreed to convey and transfer to Joshua all their interest in said real estate and personal property owned by Asaph, and Wesley and the sister each received $20,000 therefor, and the three children of Seeley together received a like sum.   This settlement was freely and voluntarily made, without any fraud or concealment, and was apparently satisfactory to all concerned; and conveyances of the real estate were subsequently executed conformably to the agreement.   At the same time these next of kin in the transfer of the personal property of Asaph to Joshua expressly waived their right to administer upon the goods and chattels of the intestate, and requested the appointment of Joshua, or some one named by him, as administrator, and requested the surrogate of Oneida county to enter a decree discharging the administrator without notice or citation to said next of kin.   In August, 1880, the children of Seeley Mather complained to Joshua that they had not received a sufficient sum for their share in the property of Asaph, and Joshua paid to the three a further sum of $10,000.   This claim was made at the instigation of Wesley; and, while there is no direct proof that he received any further sum at that time, he took the initiative in the settlement, and his admissions indicate that he also received an additional payment.   In 1884 Seth and Devillo Mather, the sons of Seeley, commenced an action to set aside the conveyance and transfers mentioned, alleging that they were fraudulently induced and that the consideration paid was inadequate.   Joshua and Wesley were made defendants.   The suit was settled by Joshua paying the plaintiffs $20,000, and the evidence tends to show quite satisfactorily that Wesley received a similar sum.   A formal instrument was executed and acknowledged by the children of Seeley, Wesley and others acknowledging full satis-

faction of every claim or cause of action against Joshua connected with the estate of Asaph, and consenting that final judgment be entered dismissing the complaint, which was done. The administrators of Mrs. Elliott commenced a similar action, and a like settlement was made with them. In January, 1888, Charles W. Mather and the defendant Edward Bushinger were duly appointed administrators of the goods, etc., of Asaph by the surrogate of Oneida county, and in April, 1889, a decree was entered judicially settling their accounts.

In the light of these facts, the plaintiff must be effectually concluded from any further reopening of the estate of Asaph Mather. The original settlement was apparently fairly made, and acceptable to all his next of kin. There is nothing in the evidence warranting the charge of fraud or overreaching, or, at least, it was a question of fact properly disposed of at the Trial Term. Beyond that, the statute of limitations has long run against the alleged claim when this action was commenced in November, 1901. Wesley did not die until September, 1892, and acquiesced in the settlements made, and long before his death the statutory bar had cut off the remedy here sought to be applied. Joshua and Charles Mather were also dead when this action was commenced. The plaintiff delayed her action until after the death of the parties who were familiar with the transactions involved in it, and, consequently, there is, in some instances, an absence of that direct evidence which we might have expected to elucidate the condition of the affairs of Asaph had the action been commenced and tried in the lifetime of these men who were conversant with them.

Wesley Mather, the father of the plaintiff, died in September, 1893 leaving a will in which he named his son, Charles W. Mather, sole executor and trustee. Wesley, before the death of Asaph, had been a farmer in New Hartford near Utica. After the death of his brother he moved into Utica, retaining his farm, but engaging in stock speculation to quite an extent. The plaintiff has given some proof tending to show that he was enfeebled mentally, as well as physically, in the later years of his life; but the weight of the evidence is decidedly in support of the finding of the court to the contrary. By his will and codicil he gave his executor and trustee full authority to manage and dispose of his property and receive the rents and profits, and to reinvest the moneys received, and directed the trust for the benefit of his children to continue for five years, and directed a distribution of the avails among his five children, subject, however, to the annual payment to his executor and trustee of $600 in lieu of commissions. Wesley left several pieces of real estate and his personal estate inventoried at $17,145.94. Charles took charge of the property and disposed of some of the real estate, kept an account in the Mather bank to his credit as executor, and seems to have been careful and judicious in the management of the trust committed to him, and accounted for the income and profits accruing from the property. On July 11, 1894, and long before the expiration of the five-year period for the termination of the trust estate, the devisees agreed to partition among themselves the home farm of Wesley, which was the most valuable tract of the real estate of which he died seised. On January 19, 1905, they executed a written agreement for a division of the residue of

the estate devised by their father, and Charles had already sold and conveyed two or three parcels of the land. Conveyances were subsequently made in compliance with this agreement. On the same day Charles Mather distributed among the beneficiaries of Wesley the personal property of the estate, transferring securities and bonds, and paying money so that each received the one-fifth portion to which he was entitled. All these legatees executed a release and satisfaction, acknowledging receipt in full from Charles, as executor and trustee, and consenting to the entry of a decree judicially settling his account without notice. This instrument was executed by Albert Mather, the son of Wesley, who has assigned his interest in this estate to the plaintiff, and also by the plaintiff and the other children of Wesley. Before the execution of this paper, a statement of the property was presented to the children, who were together at the time, and the distribution and the condition of the estate were fully discussed and considered, and the adjustment seems to have been honestly made, and the trial court has found the division included "all and every remaining part of the estate of Wesley Mather, deceased," and nothing was thereafter received by the executor. Charles Mather lived until November, 1899, and no attack was made upon this settlement during his lifetime. We are satisfied that the adjustment ought not to be disturbed. In January, 1900, after the death of Charles, the plaintiff made application to the Surrogate's Court of Oneida County to be appointed administratrix, with the will annexed, of her father; but the release and satisfaction were presented in opposition thereto, and the application was thereupon dismissed.

After the death of Asaph, as already noted, Joshua and Charles continued the banking business as copartners. In November, 1890, the A. D. Mather & Co's Bank was incorporated, and purchased the bank assets of the copartnership, aggregating $211,627.58, and assumed liabilities amounting to over $111,000. In February, 1892, the assets of the copartnership, other than the banking business, were assigned to Joshua by Charles, and he at the same time conveyed to Joshua certain tracts of real estate and the income for life of a valuable building in Utica, the title whereof was in Charles, and Joshua assumed the copartnership liabilities. Joshua died in August, 1893, leaving a will which was admitted to probate, and Charles was appointed executor. His will contained several general bequests, and he gave and bequeathed to his executor in trust "such an amount of my personal estate as shall, in his judgment, be sufficient to yield a net annual income of eight hundred dollars ($800), payable quarterly," for the plaintiff, and a like annuity to Sarah J. Turner, another niece, and a sister of the plaintiff, and also to two nephews, including Albert Mather, the plaintiff's assignor. The personal estate of Joshua amounted to $77,304.96, while his debts aggregated $102,533.77; but he left real estate of the value of more than $200,000 above incumbrances. Charles paid these annuities until his death in 1899, although no part of the personal estate was segregated for that purpose. The defendant Bushinger was thereafter appointed administrator, with the will annexed, of Joshua, and declined to pay the annuities, as the personal property was insufficient to pay the debts of the testator. In October,

1900, Sarah J. Turner and Nathan Overend, as committee of Warren Mather, one of the annuitants, commenced an action in the Supreme Court alleging the inadequacy of the personal assets of the testator to pay his debts, and asking that these annuities to them be adjudged a lien upon the real estate of the deceased. The legatees of the deceased, including the plaintiff and Albert Mather, were parties defendant, and answers were interposed on behalf of some of the defendants, but the two annuitants named did not answer, probably because their interests were identical with those of the plaintiff. The complaint was dismissed on the merits after a trial at Special Term, and the opinion of that court was adopted in the Appellate Division (86 App. Div. 172, 83 N. Y. Supp. 1013), and also in the Court of Appeals (179 N. Y. 581, 72 N. E. 1152). The effect of that judgment was to establish that the annuities were not a charge upon the real estate. The basis of that action was the inadequacy of the personal assets to provide a fund for the annuities, and we agree with the conclusion of the trial judge that the decision is res adjudicata as against the plaintiff and Albert Mather on that proposition. They were parties defendant, suffered default, and apparently acquiesced in the allegations of the complaint. Independently of that question, however, the court has found the amount of the personal estate left by Joshua and the amount of his debts, showing that his liabilities exceeded the amount of his personal assets, and the evidence fully sustains that finding.

The pith of this litigation is an attack upon Charles. He undoubtedly had the confidence of Asaph, Joshua, and Wesley Mather. He was employed in the bank, was familiar with their business, and both his father and uncle, Joshua, invested him with plenary authority in the distribution and settlement of their respective estates. None of the parties, who since the death of Charles have been challenging his integrity, made any assault upon him during his lifetime, and the evidence should be strong and convincing in order to overturn the settlements made by him.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs and disbursements in favor of each respondent represented by separate attorneys. All concur.