LOUIS PRAGI, Respondent, v. LEHIGH COAL AND NAVIGATION COMPANY, Appellant.

First Department, January 26, 1917.

Master and servant — negligence — action under Employers' Liability Act of State of Pennsylvania for injury to employee in coal mine — evidence — testimony as to charges against plaintiff's attorney in prior action against defendant — release — burden of proof.

Action under the Employers' Liability Act of the State of Pennsylvania to recover for personal injuries received in defendant's coal mine and alleged to have been sustained by reason of the negligence of a motorman whose duty it was to run trains of cars in and out of the various openings of the mine. Evidence examined, and *held*, insufficient to establish that said motorman had supervision over the plaintiff and other employees, and that a verdict for the plaintiff was contrary to the weight of the evidence.

Evidence as to a prior action against the defendant by one of its employees through the same association of attorneys as appeared for the plaintiff in this action, and that said action was settled by the defendant and charges preferred by it against said attorneys, was irrelevant and immaterial.

In order to relieve an employee from the responsibility of a release for personal injuries, in the absence of fraud or misrepresentation, it is necessary that the mistake should be mutual, as a person is presumed to know the contents of and assume the responsibility for any instrument to which he places his signature.

The burden rests upon a person who asserts the invalidity of such an instrument to establish facts sufficient to vitiate it.

APPEAL by the defendant, Lehigh Coal and Navigation Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of April, 1916, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's

office on the 23d day of May, 1916, denying defendant's motion for a new trial made upon the minutes.

*Herbert C. Smyth,* for the appellant.

*Roger Foster,* for the respondent.

PAGE, J.:

This action was brought under the Employers' Liability Act of the State of Pennsylvania (Act of June 10, 1907; Penn. Laws of 1907, p. 523, No. 329) to recover for personal injuries received in defendant's coal mine, and alleged to have been sustained by reason of the negligence of a person for whose acts defendant was alleged to be responsible. The plaintiff testified that he was instructed by the mine foreman to go into a certain section of the mine, and that the motorman would tell him what to do; that on arriving at the place where he was to work the motorman directed the men in plaintiff's gang to load cars, assigning each man to his position. When the cars were ready to be taken out the motorman would inspect them, and if insufficiently loaded, would order more coal put in, or if overloaded, would direct them to shovel out coal. If the motorman had the power to, and did, give such orders, the defendant would undoubtedly be liable for his negligence. (*Counizzarri* v. *Snyder,* 252 Penn. St. 377.) If, however, the motorman did not give the orders, the injury would have been the result of the negligence of a fellow-servant, and the plaintiff could not recover. On behalf of the defendant, the mine foreman, the person who plaintiff testified gave him his orders to report to the motorman, denied that he gave him such orders, and stated that the duty of the motorman was solely to operate his motor and deliver empty cars into the various galleries of the mine, and to draw out the loaded cars, and that he had no power to give orders to the men, who were under the charge and direction of an assistant foreman, Griffiths. The motorman denied that he gave any orders to the men whatsover. Griffiths testified that the plaintiff and the men in his gang were under his direction, and that he alone gave them orders. Two of the men who were working in the same gang with plaintiff testified that the motorman gave them no instructions, but that their instructions were given

to them by Griffiths. An assistant to the motorman, called a "poler," who rode on the motor and coupled the cars, also testified that he never heard the motorman give any orders to the men. Although all the witnesses for the defendant were in its employ, and, therefore, in a measure, interested witnesses, as was the plaintiff, I am of the opinion that where the plaintiff's testimony of the most important element of liability in the case is not alone uncorroborated, but is contradicted by so many witnesses, and in view of the improbability that, in a large colliery such as this is shown to be, having a staff of foremen, the supervision of the men would be placed in charge of a motorman whose duty it was to run trains of cars in and out the various openings of the mine, the verdict for the plaintiff was contrary to the weight of the evidence. Furthermore, in this trial a great deal of absolutely irrelevant and immaterial evidence was admitted over the objection and exception of the defendant's attorney. One of the witnesses for the defendant, Macek, had been injured by an explosion in the mine and had come to New York and brought an action against the defendant through the same association of attorneys that appeared for the plaintiff in this action. That action was settled by the company behind the back of the attorneys and charges were preferred to the Bar Association against these attorneys which were sent before the official referee. All of these facts were developed before the jury and the claim was made in the summation of plaintiff's counsel that these disciplinary proceedings were brought and financed by the defendant for the purpose of punishing the attorneys for instituting suits against them and a veiled reference was made to the *Oppenheim* case in which counsel stated a corporation which having itself been guilty of buying witnesses had unjustly accused the attorney of similar practice.

The learned trial justice stated in his charge to the jury that "the burden is on the defendant to satisfy you that the plaintiff executed and delivered a valid release to the defendant knowingly and understandingly, relieving the defendant from all future responsibility or liability on the score of his accident." The facts to which this portion of the charge refers were that the plaintiff after receiving six months' benefit from

a fund that had been established by the company to pay its injured employees had accepted payment of three months' additional half-rate wages and signed a general release. The facts are that this release was read over in the presence of the plaintiff and interpreted to him sentence by sentence by Mrs. Macek, with whom at that time plaintiff was boarding; that at first he refused to sign, on the ground that he would not be able to resume work in three months' time; that then the assistant to the vice-president was called in and again went over the release, having the same interpreted to the plaintiff by Mrs. Macek, and stated that if at the end of the three months the plaintiff was unable to work and had continued to be sober during that period, the company would treat him as it had all other injured employees and would not discontinue the payments; that thereupon the plaintiff signed the release with his mark. There is no claim that any fraud or misrepresentation was used by the defendant's agents. The only claim of the plaintiff is that Mrs. Macek did not correctly interpret the release to him and that he signed it without a complete understanding. In order to relieve a person from the responsibility of a document that he had signed in the absence of fraud or misrepresentation, it is necessary that the mistake should be mutual, as a person is presumed to know the contents of and assume the responsibility for any instrument to which he places his signature. The burden rests upon the person who asserts the invalidity of the instrument to establish the facts that would vitiate it, and not upon the person who produces the instrument upon which he relies.

Upon the whole record the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., MCLAUGHLIN, SCOTT and DAVIS, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.