Matter of the Estate of EMMA L. TYRRELL, Deceased.

(Surrogate's Court, New York County, January, 1921.)

*Husband and wife — the burden of proving the invalidity of a second marriage is upon the one who asserts its invalidity — equitable jurisdiction of Surrogate's Court — evidence — accord and satisfaction.*

MOTION to vacate decree granting letters of administration.

Edward F. Clark (Leonard J. Reynolds, of counsel), for petitioner.

George A. Knobloch (Loring M. Black, of counsel), for executors.

FOLEY, S. Motion to vacate decree granting letters of administration upon the ground that the decree was procured by fraud. It is claimed that the administrator (now deceased) had a wife living at the time of his marriage to intestate. Dr. Charles A. Tyrrell married the decedent, then Emma Lynas, a resident of Indiana, about thirty years ago. No positive evidence has been given to fix the date or place of this marriage, but a child was born to the couple in New York city on December 21, 1895. This child died shortly afterwards. The parties lived together up to a time when the intestate became insane. She died in September, 1917. Previously to this marriage, and in 1881, Dr. Tyrrell had married one Eliza

Glaister in Australia. There was a son born of this marriage, and the first Mrs. Tyrrell and this son are both living. They lived together at Sydney, New South Wales, from 1881 to 1884. Subsequently Dr. Tyrrell left Australia and came to America. Dr. Tyrrell explains the circumstances of his second marriage in his will as follows: "For the purpose of explaining a condition which has recently arisen, I state that I was married to Eliza Glaister Tyrrell, in Australia, and after living with her for several years she disappeared, and although I thereafter made due and diligent search and inquiry for her I could not locate her or ascertain if she was alive, and years afterwards I was advised by my lawyer that I could legally marry." It appears further that Dr. Tyrrell and his wife, the decedent, established a successful business here in New York, and through their joint efforts the money of this estate was accumulated. The first Mrs. Tyrrell appears to have been unheard of for thirty years, until she and her son appeared in New York. Thereupon Dr. Tyrrell made a financial settlement upon her and upon her son. The first wife claims that she was deserted by the doctor in the year 1884. Neither the first wife nor the son are parties here, nor are they claimants of this estate, but the two brothers of the decedent, one of whom is the petitioner, attacked the validity of Dr. Tyrrell's marriage to their sister. The court cannot find from the evidence that the second marriage took place prior to 1894.

The proofs point strongly to a ceremonial marriage between the decedent and Charles A. Tyrrell, but even if there was none, there is ample proof of a common-law marriage. There is no direct proof that the second marriage was illegal, or that Tyrrell did not procure a divorce from his first wife, or that the marriage was not otherwise legally dissolved. Furthermore, the second marriage may have been *voidable*

only, and the doctor may have remarried in good faith after his first wife's absence for five years. Dom. Rel. Law, § 7, subd. 5. The burden of proving the invalidity of the second marriage is on the petitioner. *Palmer* v. *Palmer,* 162 N. Y. 130; *Matter of Meehan,* 150 App. Div. 681; *Barker* v. *Barker,* 172 id. 244; *Matter of Salvin,* 106 Misc. Rep. 111; *Price* v. *Tompkins,* 108 id. 263; affd., 179 N. Y. Supp. 946. The facts in this estate are almost identical with the facts in *Matter of Meehan, supra,* and the court there, through Justice Miller, stated the rule applicable as follows: "We think that where the fact of a marriage, especially of a ceremonial marriage, followed by the long cohabitation of the parties and the birth of children, is established, it is incumbent upon whoever assails the validity of the marriage and the legitimacy of the children to prove his case by evidence instead of presumptions, even if that involve proof of a negative, and especially when, as here, the attempt is made after the lapse of thirty years and the death of the parties, not by anyone claiming rights under an alleged prior marriage." 150 App. Div. 681, 684.

The decisions of the courts of Indiana, the original domicile of decedent, are even stronger on the question of requiring complete destructive proof of every essential necessary to controvert the validity of the second marriage. In *Boulden* v. *McIntire,* 119 Ind. 574, cited in *Matter of Meehan, supra,* the court said: "In favor of the validity of a second marriage contracted by a woman while her first husband is alive, it will be presumed that the first marriage was legally dissolved by a divorce before the second was entered into, and one who asserts the invalidity of the later marriage must show that there had been no divorce. Where a negative is essential to the existence of a right, the party claiming the right has the burden of proving such negative; hence where one bases his claim to land upon the alleged invalidity of

a marriage, he must, by proper proof, remove *every* presumption in favor of the legality of the marriage, although to do this he must prove a negative." Under the authorities cited the petitioner was required to rebut completely and satisfactorily this presumption of the validity of the second marriage. Such presumption is strengthened by the uninterrupted cohabitation of the parties to it for a long period of years, the attitude of their friends, relatives and their acquaintances, and the birth of a child. I hold that the evidence before me, and particularly the testimony of the first wife, does not rebut the presumption of the validity of the second marriage. The petitioner has not sustained the burden of proof upon this issue.

The executors of Dr. Tyrrell's estate raise an affirmative defense by their answer that the petitioner has released his interest in the estate by a written receipt, and that there has been an accord and satisfaction of his rights in the estate. This release is in evidence, and reads: "I am perfectly willing to accept the piece of property situated in Sixth street and Logansport, Indiana, * * * together with the sum of $3,000 in cash as the representative share of the estate of my late sister, Emma M. Tyrrell," signed George H. Lynas. The petitioner's claim is that the release was obtained by Dr. Tyrrell by fraud and particularly by his silence as to his previous marriage. I am of the opinion that this court possesses full equitable jurisdiction in this proceeding brought under section 2490, subdivision 6, to set aside and vacate a decree. Otherwise the court would have to stop the proceedings and remit the parties to the Supreme Court in an action to set aside the release. Section 2510, subdivision 2, must be read in conjunction with section 2490, subdivision 6. The former subdivision relates to the exercise of jurisdiction in this court in the " granting of letters of administration." If equity powers may be exercised in granting

letters, certainly the court possesses like power in vacating a decree granting letters. Further, section 2490, subdivision 11, provides that a surrogate has power to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred. In order to determine whether the petitioner is a party interested and plainly within the statutory authority, this court has jurisdiction "To administer justice in all matters relating to the affairs of decedents, * * * to try and determine all questions, legal and equitable," in a proceeding of this kind. *Matter of Malcomson,* 188 App. Div. 600; *Matter of Spaulding,* 112 Misc. Rep. 317; *Matter of Fox,* 166 App. Div. 718; *Matter of Brady,* 111 Misc. Rep. 492. It appears that under the law existing at the time of the death of Mrs. Tyrrell her husband was entitled to the whole estate, personal and real, under the law of New York and Indiana. All of the personalty was located in New York (the domicile of decedent), and all of the realty was situated in Indiana. In New York, prior to the amendment of section 100 of the Decedent Estate Law, in effect May 3, 1919, the common-law rule would apply. It was unnecessary, therefore, for the two brothers to be cited as next of kin upon the application for letters of administration. They appear to have been made parties, however, and to have signed renunciations in favor of the husband as administrator. The execution of these renunciations is strong proof that all the parties knew that a question existed as to the validity of the marriage, and that the execution of these papers was thought necessary to complete the settlement of the controversy. The settlement made between the husband and the two brothers provided for the payment of a total of $14,000, or about one-half of the estate, to the brothers, and the remaining one-half to the husband. In other words, the distribution under the compromise was made as the Stat-

ute of Distribution now provides in this state. In consummation of this agreement the doctor paid the petitioner $3,000 in cash and conveyed one parcel of the Indiana real estate of the value of $4,000, thus making a total of $7,000. The remainder of the real estate, valued at $7,000, was to go to the other brother. The brothers testified that they knew nothing of the prior marriage by Dr. Tyrrell at the time this settlement was made by him, and now when his lips are closed by death they seek to set aside the entire settlement on the ground of fraud. The petitioner testifies that he was advised by his attorneys fully as to his rights under the New York and Indiana law, that he had no interest in the estate as a matter of law, and that he understood that the property given to himself and brother was a gratuity or gift on the part of the doctor. The language of the receipt, which he admits he signed, and the circumstances of the settlement controvert this contention, for the receipt refers to the payment *for his share of the estate.* The appearance on the stand of these two brothers was that of hard-headed, mature men of more than ordinary intelligence, and their story that the settlement was a gift is unbelievable. "The burden rests upon the person who asserted the invalidity of the instrument to establish the facts that would vitiate it, and not upon the person who produces the instrument upon which he relies." Page, J., *Pragi* v. *Lehigh Coal & Nav. Co.,* 176 App. Div. 265, 268. The evidence to set aside a settlement under these circumstances must be strong and convincing. *Monroe* v. *Turner,* 114 App. Div. 634, 640. Dr. Tyrrell is dead and his version of the settlement is unobtainable. The testimony of the brothers as to their negotiations is subject to careful scrutiny. *McKeon* v. *VanSlyck,* 223 N. Y. 392; *Ward* v. *N. Y. Life Ins. Co.,* 225 id. 314, 322. In a somewhat similar case (*Geiger* v. *Ryan,* 123 App. Div. 722) the late Justice Gaynor stated that, whether the second

marriage were valid or no, a claim that it was valid made by the surviving husband was made in good faith, and a release to him made by a child of the first husband in settlement of her mother's estate should not be set aside as founded upon a fraudulent claim.

Upon the facts before me I hold that no fraud has been established in the making of the settlement. On the other hand, it appears that a fair adjustment of the estate and an executed accord and satisfaction was entered into by the petitioner. *Matter of Waters,* 183 App. Div. 840; *Matter of Wagner,* 119 N. Y. 28; *Matter of Pruyn,* 141. id. 544; *Matter of Losee,* 119 App. Div. 107; *Minehan* v. *Hill,* 144 id. 854.

The petitioner has no standing in this court, having released any interest he might have possessed in the estate. Application denied on both the foregoing grounds. Submit order on notice with proper findings and conclusions in accordance with this decision.

Application denied.