CHEEVER N. ELY, as Executor of SMITH ELY, Deceased, Respondent, *v.* WILLIAM H. MEGIE et al., Respondents, and EDWIN A. ELY et al., Appellants.

Will — when extrinsic evidence may be received to determine whether a legacy is charged upon testator's real estate — when such evidence may be received to show meaning of words "personal estate" as used by testator — construction of will and codicils together with extrinsic evidence — bequests to certain charitable institutions held void.

1. Whether a legacy is charged upon the real estate of a decedent is always a question of the testator's intention. The language of the will is the basis of the inquiry, but extrinsic circumstances

which aid in the interpretation of that language, and help to disclose the actual intention, may also be considered.

2. Ordinarily the words "personal estate" have a well-understood meaning and seldom require resort to extrinsic evidence to explain their significance. But the presence of the words "personal estate" as they appear in the seventh clause of the codicil of testator of necessity gives rise to an ambiguity which required the justice at Trial Term to resort to extrinsic evidence to aid in an interpretation of the will and codicil in connection with the general scheme of the instruments.

3. On examination of the will and codicils of testator, together with the extrinsic evidence, *held*, that the testator intended to charge the payment of legacies given by his will and codicil upon the real property not devised by him; that the valid legacies given by the will of the testator and the codicil thereto are charged upon the real property of which he died seized which was not specifically devised by him; that the power of sale given to the executors of the will is a valid power and should be exercised by them for the purpose of paying the legacies given by the will and the codicils thereto together with the transfer and inheritance taxes.

4. Where legacies bequeathed to certain charitable institutions fail, not by reason of any defect in the will and codicils, but solely in consequence of matter dehors the instrument (Decedent Estate Law [Cons. Laws, ch. 13], § 19), the doctrine of "Dependent relative revocation" is not applicable to preserve bequests made in a former codicil from the operation of the statute since in the codicil under consideration the declaration of revocation was complete and not dependent upon the validity of the bequests made therein which upon the face of the instrument were unambiguous; hence the courts are powerless to reinstate the earlier bequests.

5. A bequest to an unincorporated charity managed by boards and officers of another association of which it is an offshoot is held invalid for the reason that it was absolute, not in trust, and was in effect a bequest to an association which was incapable of taking; neither can the bequest be sustained as one to an unincorporated voluntary association.

6. A bequest to a hospital named, which was neither incorporated nor an unincorporated association, to endow in perpetuity as many beds as may be permitted to be used, by such persons as may be designated from time to time by the brothers and sister of the testator and their direct descendants, is valid, since it creates a trust for charitable uses and even if no trustee competent to take

8

had been named the legacy would not fail. (*Fries* v. *Osborn*, 190 N. Y. 35; *Austin* v. *Oakes*, 117 N. Y. 577, 589, distinguished.) *Ely* v. *Ely*, 163 App. Div. 320, affirmed.

(Argued June 6, 1916; decided October 3, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered September 14, 1914, affirming a judgment entered upon a decision of the court on trial at Special Term in an action for the construction of the will and codicil thereto of Smith Ely, deceased.

The facts, so far as material, are stated in the opinion.

*William M. Wherry, Jr.*, and *Frederic E. Mygatt* for Edwin A. Ely et al., appellants. It was error to receive extrinsic evidence for the purpose of construing the will of Smith Ely. (*Eidt* v. *Eidt*, 203 N. Y. 325; *Bevan* v. *Cooper*, 72 N. Y. 317; *Dreyer* v. *Reisman*, 202 N. Y. 476; *Fries* v. *Osborn*, 190 N. Y. 35; *Brill* v. *Wright*, 112 N. Y. 136; *Keimier* v. *Rogers*, 42 N. Y. 531; *Lahey* v. *Cortright*, 132 N. Y. 450; *Taylor* v. *Dodd*, 58 N. Y. 335; *Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354; *Hoyt* v. *Hoyt*, 85 N. Y. 142; *McCorn* v. *McCorn*, 100 N. Y. 511; *Irwin* v. *Teller*, 188 N. Y. 25; *Briggs* v. *Carroll*, 117 N. Y. 288; *Richardson* v. *Richardson*, 145 App. Div. 540.) The bequest to the Overlook Hospital is invalid. (*Robb* v. *W. & J. College*, 103 App. Div. 327; *White* v. *Howard*, 46 N. Y. 144; *Cross* v. *U. S. Trust Co.*, 131 N. Y. 330; *Catt* v. *Catt*, 118 App. Div. 742; *Wetmore* v. *Parker*, 52 N. Y. 450; *Bird* v. *Merklee*, 144 N. Y. 544; *Matter of Griffin*, 167 N. Y. 71; *Fralick* v. *Lyford*, 107 App. Div. 543; *Murray* v. *Miller*, 178 N. Y. 316.) The legacy to the New York Society for Improving the Condition of the Poor and the legacy to the Fresh Air Home for Crippled Children, known as "Sea Breeze," are each invalid. (*Stephenson* v. *Short*, 92 N. Y. 433; *Matter of Cooney*, 112 App. Div. 659; *United States* v. *Gilmore*, 8 Wall. 330; *Hakes* v. *Peck*, 30 How. Pr. 104; *People ex rel.*

*Outwater* v. *Green*, 56 N. Y. 466; *Pouch* v. *Prudential Ins. Co. of America*, 204 N. Y. 281; *Pulitzer* v. *City of New York*, 48 App. Div. 6; *Taylor* v. *Village of Matteawan*, 122 App. Div. 402; *Matter of Baird*, 126 App. Div. 439, 443; *Davis* v. *Davis*, 75 N. Y. 221.) The legacy given to the New York City Mission and Tract Society, in and by article seventh of the codicil, is invalid. (*Kerr* v. *Dougherty*, 79 N. Y. 327.)

*Tompkins McIlvaine, A. Glaser* and *William E. Carnochan* for New York City Mission Society, appellant. Section 19 of the Decedent Estate Law did not make a legacy to a charitable corporation, contained in a will executed within two months of the testator's death, absolutely void, as if it had never been given at all. On the contrary, as this court has said, it merely made it voidable, at the election of those for whose benefit the statute was enacted; and, to make it operative at all, their election had to be affirmatively set up. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Matter of Stilson*, 85 App. Div. 132; *Matter of Eldredge*, 55 Misc. Rep. 636; *Robb* v. *W. & J. College*, 103 App. Div. 327; *Frazer* v. *Hoguet*, 65 App. Div. 192.) The repeal of a statute creating a mere defense (or even a cause of action) and conferring a new and extraordinary privilege unknown to the common law or equity, and not founded on any contract right, operates (except in cases where the privilege has been availed of and prosecuted to judgment) to obliterate the statute with the same effect as if it had never existed, and claims under it not ripened into judgment are swept away. (*People* v. *Livingston*, 6 Wend. 526; *Butler* v. *Palmer*, 1 Hill, 324; *Curtis* v. *Leavitt*, 15 N. Y. 9; *Ewell* v. *Daggs*, 108 U. S. 143; *Washburn* v. *Franklin*, 35 Barb. 599; *Church* v. *Rhodes*, 6 How. Pr. 281; *Ettor* v. *Tacoma*, 57 Wash. 50.) Even if section 19 of the Decedent Estate Law were unrepealed the appellant, none the less, would be entitled, under the doctrine known as "dependent

relative revocation," to receive at least so much of the legacy given to it by the 1911 codicil as would equal what was given to it by the 1909 codicil. (40 Cyc. of Pl. & Pr. 1188; *Onions* v. *Tyner,* 1 P. Wms. 344; *Rudy* v. *Ulrich,* 69 Penn. St. 177; *Matter of Pilsbury,* 50 Misc. Rep. 367; *Austin* v. *Oakes,* 117 N. Y. 577.)

*Francis Smyth* for New York Association for Improving the Condition of the Poor, appellant. The legacy for Sea Breeze Hospital is valid. (*Shotwell* v. *Mott,* 2 Sandf. Ch. 50; *Potter* v. *Chapin,* 6 Paige, 639; *Wright* v. *Methodist Church,* 1 Hoff. Ch. 202; *King* v. *Woodhull,* 3 Edw. Ch. 79; *Hornbeck's Exrs.* v. *Am. Bible Society,* 2 Sandf. Ch. 133; *Catt* v. *Catt,* 118 App. Div. 742; *Banks* v. *Phelan,* 4 Barb. 80; *Newcomb* v. *St. Peter's Church,* 2 Sandf. Ch. 636; *Coggeshall* v. *Pelton,* 7 Johns. Ch. 292; *Bartlett* v. *King,* 12 Mass. 537; *Williams* v. *Williams,* 8 N. Y. 525; *Matter of Cunningham,* 206 N. Y. 601.) Where a codicil made within the prohibited period in substance merely cuts down the gift contained in the will made more than sixty days prior to the death, the gift should be sustained. (*Matter of Farmers' Loan & Trust Co.,* 138 App. Div. 121; 199 N. Y. 569.)

*Egburt E. Woodbury, Attorney-General* (*Robert P. Beyer* of counsel), for State of New York, appellant. The bequest for the benefit of Sea Breeze created a trust which should be carried into effect by the Supreme Court. (*Allen* v. *Stevens,* 161 N. Y. 122; *Matter of Griffith,* 167 N. Y. 71; *Matter of Graves,* 171 N. Y. 40; *Miller* v. *Miller,* 178 N. Y. 316; *Bowman* v. *D. & F. Missionary Society,* 182 N. Y. 494; *Mount* v. *Tuttle,* 183 N. Y. 358; *Robb* v. *W. & J. College,* 185 N. Y. 485; *Rothschild* v. *Schiff,* 188 N. Y. 327; *St. John* v. *Andrews Institute,* 191 N. Y. 254; *Manley* v. *Fiske,* 139 App. Div. 665; 201 N. Y. 546; *Matter of Robinson,* 203 N. Y. 280; *Starr* v. *Selleck,* 145 App. Div. 869; 205 N. Y. 545.)

*William A. W. Stewart* for plaintiff, respondent. Evidence extrinsic of the will was properly admitted. (*Kalbfleisch* v. *Kalbfleisch,* 67 N. Y. 354; *Taylor* v. *Dodd,* 58 N. Y. 335; *Irwin* v. *Teller,* 188 N. Y. 25; *Hoyt* v. *Hoyt,* 85 N. Y. 142; *McCorn* v. *McCorn,* 100 N. Y. 511; *Briggs* v. *Carroll,* 117 N. Y. 288; *Galen* v. *Brown,* 22 N. Y. 37; *Burr* v. *B. Ins. Co.,* 16 N. Y. 267.) The legacies given by the will to the New York Association for Improving the Condition of the Poor and the New York City Mission and Tract Society are invalid. (Cons. Laws, chap. 13, § 19; *Kerr* v. *Dougherty,* 79 N. Y. 327; *Lefevre* v. *Lefevre,* 59 N. Y. 434.) The legacy to the Overlook Hospital is valid as a trust for charitable uses. (*Allen* v. *Stevens,* 161 N. Y. 122; *Matter of Cunningham,* 206 N. Y. 601; *Matter of Miller,* 149 App. Div. 113.)

*Everett J. Esselstyn* and *J. Ard Haughwout* for Board of Church Erection Fund of Presbyterian Church, respondent. The trial court properly admitted extraneous evidence as an aid to the construction of the will and codicil. (Schouler on Wills [5th ed.], § 572; *Brill* v. *Wright,* 112 N. Y. 129; *Morris* v. *Sickly,* 133 N. Y. 456; *Hoyt* v. *Hoyt,* 85 N. Y. 142; *Kalbfleisch* v. *Kalbfleisch,* 67 N. Y. 354; *Taylor* v. *Dodd,* 58 N. Y. 335; *Irwin* v. *Teller,* 188 N. Y. 25; *Briggs* v. *Carroll,* 117 N. Y. 288; *McCorn* v. *McCorn,* 100 N. Y. 511.)

*Morgan J. O'Brien* and *Robert L. Redfield* for William H. Lawrence, Jr., respondent. The bequest to the Overlook Hospital was a trust for charitable uses, and not a legacy for the personal use and benefit of that institution. (*Allen* v. *Stevens,* 161 N. Y. 122; *Bowman* v. *Domestic, etc., Society,* 182 N. Y. 494; *Matter of Robinson,* 203 N. Y. 380; *Matter of Cunningham,* 206 N. Y. 601; *Trustees, etc.,* v. *Carmody,* 211 N. Y. 286; *St. John*

v. *Andrews Inst.*, 191 N. Y. 254; *Manley* v. *Fiske*, 139
App. Div. 665; 201 N. Y. 546; *Associate Alumni* v. *Gen.
Seminary*, 163 N. Y. 417; *Riker* v. *Leo*, 115 N. Y. 93.)
The fact that the Overlook Hospital was unincorporated
at the time of testator's death is immaterial. (2 Redf.
on Wills [3d ed.], 213; *Matter of Griffin*, 167 N. Y. 71;
*Allen* v. *Stevens*, 161 N. Y. 122; *Bowman* v. *Domestic,
etc., Society*, 182 N. Y. 494; *Matter of Robinson*, 203
N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Matter of Graves*, 171 N. Y. 43; *Matter of Miller*, 149 App.
Div. 113.)

*John Ewen* for Seventh Presbyterian Congregation,
respondent. Evidence as to the condition of the testator
and surrounding circumstances was properly received and
was admissible. (*Hoyt* v. *Hoyt*, 85 N. Y. 142; *McCorn*
v. *McCorn*, 100 N. Y. 511; *Brill* v. *Wright*, 112 N. Y.
129; *Overheiser* v. *Lackey*, 207 N. Y. 229; *Taylor* v.
*Todd*, 58 N. Y. 335; *Kalbfleisch* v. *Kalbfleisch*, 67 N. Y.
354.) The legacies given by the will and codicil were
chargeable upon the testator's real estate not specifically
devised. (*Irwin* v. *Teller*, 188 N. Y. 25; 188 N. Y. 578;
*McManus* v. *McManus*, 179 N. Y. 338; *Briggs* v. *Carroll*, 117 N. Y. 288; *McCorn* v. *McCorn*, 100 N. Y. 511;
*Scott* v. *Stebbins*, 91 N. Y. 605; *Taylor* v. *Todd*, 58 N. Y.
335; *Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354; *Le Fevre*
v. *Toole*, 84 N. Y. 95; *Hoyt* v. *Hoyt*, 85 N. Y. 142;
*Overheiser* v. *Lackey*, 207 N. Y. 229.)

*Carrington G. Arnold* for William G. Arnold et al.,
respondents. The evidence offered by the plaintiff,
respondent, was properly received by the court. (*Taylor*
v. *Dodd*, 58 N. Y. 335; *Kalbfleisch* v. *Kalbfleisch*, 67
N. Y. 354; *Hoyt* v. *Hoyt*, 85 N. Y. 142; *Goddard* v.
*Pomeroy*, 36 Barb. 546; *McCorn* v. *McCorn*, 100 N. Y.
511; *Irwin* v. *Teller*, 188 N. Y. 25; *Brill* v. *Wright*, 112

N. Y. 129; *Briggs* v. *Carroll*, 117 N. Y. 288; *Richardson* v. *Richardson*, 145 App. Div. 540.)

*George H. Walker* and *Crosby J. Beakes* for New York State Realty and Terminal Company, respondent. The bequests of $100,000 to the Children's Aid Society; of $100,000 to the New York Association for Improving the Condition of the Poor, and of $100,000 to the New York City Mission and Tract Society; the bequest of $50,000 to the Fresh Air Home for Crippled Children, and the bequest of $10,000 to the West Side Day Nursery are invalid for the reason that the will was not made and executed by said testator at least two months prior to the death of the testator. (*Kerr* v. *Dougherty*, 79 N. Y. 327; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Stevenson* v. *Ontario Orphan Asylum*, 92 N. Y. 433; *Matter of Kavanaugh*, 125 N. Y. 418; *Pearson* v. *Collins*, 113 App. Div. 657; *Matter of Cooney*, 112 App. Div. 659.)

*Henry T. Randall* for Baptist Church at Northfield, respondent. The legacies are a charge on decedent's real property. (*Miller* v. *Gilbert*, 144 N. Y. 68; *Roe* v. *Vingut*, 117 N. Y. 204; *Tilden* v. *Greene*, 130 N. Y. 29; *McCorn* v. *McCorn*, 100 N. Y. 511; *Fraser* v. *United Presbyterian Church*, 124 N. Y. 479; *McManus* v. *McManus*, 179 N. Y. 338; *Irwin* v. *Teller*, 188 N. Y. 25.) The use of the word "personal" in the codicil should not be so construed as to create an intestacy as to the real property of the decedent. (*Parks* v. *Parks*, 9 Paige, 107; *Bliven* v. *Seymour*, 88 N. Y. 469; *Weeks* v. *Cornwell*, 104 N. Y. 325; *Masterson* v. *Townsend*, 123 N. Y. 458; *Fraser* v. *United Presbyterian Church*, 124 N. Y. 479; *Matter of Russell*, 59 App. Div. 242; 168 N. Y. 169; *Power* v. *Cassidy*, 79 N. Y. 602; *Lent* v. *Howard*, 89 N. Y. 169; *Salisbury* v. *Slade*, 160 N. Y. 278; *Delafield* v. *Barlow*, 107 N. Y. 535; *Cahill* v. *Russell*, 140 N. Y.

402; *Hood* v. *Hood*, 85 N. Y. 561; *Fisher* v. *Banta*, 66 N. Y. 468; *Ashe* v. *Ashe*, 113 N. Y. 232.)

*Oscar F. G. Megie* for Gladys Megie, respondent.

HOGAN, J. Smith Ely died at the city of New York July 1, 1911, aged eighty-six years. He was a bachelor and left him surviving no ancestors or descendants, no descendants of any predeceased brother or sister, and no brothers or sisters except William H. and Edwin A. Ely, brothers, and Maria S. Vanderpoel, a sister.

The plaintiff, one of the executors of the last will of Smith Ely, sought in this action a construction of the will and codicil of the testator, a determination of the identity of the legatees thereunder, the validity of bequests contained therein and an adjudication whether the legacies given by the said instruments are a charge upon the real estate of which the testator died seized which was not specifically devised by him.

The will in question was executed March 1st, 1906. By the first paragraph of the same the testator gave to eleven individuals named in separate subdivisions thereof bequests in the aggregate twelve thousand dollars, to five several churches and chapels bequests in a total sum of twenty-seven thousand dollars, to the Ely Cemetery five thousand dollars, and by the eighteenth subdivision of said paragraph to the United Charities twelve thousand dollars in trust for charitable purposes enumerated. To his sister he gave his watches, jewelry, objects of art, etc.

By paragraph two the testator gave to his executors two hundred thousand dollars in trust, to be divided into four equal portions, to invest and keep one such portion invested for the benefit of each of his brothers, Ambrose K., William H. and Edwin A. and one such portion for the benefit of his sister Maria L. Vanderpoel, the income

of each share to be paid to the beneficiary during his or her natural life, and upon the death of Ambrose K. and Edwin A. to pay over and deliver the principal of the trust fund held for their respective benefits to the American Sunday School Union. Upon the death of William H. to subdivide the principal of the trust fund held for his benefit into two smaller shares, to keep the same invested and pay over the income from one share to each of two nieces during life and upon the death of each of said nieces to pay over and deliver the principal of the trust fund held for her benefit to her surviving issue *per stirpes;* upon the death of his sister the income from the trust fund held for her benefit was to be paid to her son during his life, and upon his death the principal to be paid to his issue, but, if he should not leave issue, to the New York City Mission and Tract Society.

The third paragraph of the will directed the executors named in the instrument to pay out of the residuary estate all transfer and inheritance taxes.

By paragraph fourth the rest, residue and remainder of testator's property, real and personal, was given to his executors in trust to invest and pay the income arising therefrom to thirty-six certain persons therein named during the lives of two grandnieces, and the survivor of them, etc., the principal to be paid over to the survivor beneficiaries in equal shares. As this clause was later revoked by a codicil, it is unnecessary to dwell further upon the same.

By paragraph fifth of the will the testator appointed four individuals as executors of his will, gave to them power, in their discretion, to lease or sell all or any part of the real property of which he should die seized; authority to appoint substitutes in the event of a vacancy, and released them from giving any bond or security.

Ambrose K. Ely, a brother of the testator, named in the second paragraph of the will, predeceased the testator

on the 6th day of February, 1907, leaving an estate of about six million dollars and a last will in and by which he left to Smith Ely, the testator, and to William H. and Edwin A. Ely, his brothers, and Maria L. Vanderpoel, a sister, property of the value of more than one million dollars each.

May 27th, 1907, the testator executed a deed of trust to the United States Trust Company of New York as trustee. Attached to the same was a list of securities turned over to the trust company under said deed aggregating in value $392,588.22. Under the terms of the deed of trust the trustee was to invest and reinvest the securities, collect and receive the income therefrom, pay to the testator quarterly the income during his life or so long as he should direct, and upon his death or such earlier disposition pay the income in equal shares to the persons named therein and the survivors of them during the lives of two grandnieces of the testator and the survivor of them, the principal to be paid to forty-one individuals named in the trust deed.

June 11th, 1909, Mr. Ely executed a codicil to his will of March 1st, 1906, in and by which he revoked the bequest made by the eighteenth subdivision of the first paragraph thereof in favor of the United Charities, also the provisions contained in the fourth paragraph of the will disposing of his residuary estate. By the second paragraph of the codicil testator devised to his brothers and sister real estate described as Number 47 West Fifty-seventh street, New York city, the Ely homestead farm at Livingston, New Jersey, and all other real property of which he might die seized in the town of Livingston, New Jersey. In the third paragraph testator made specific bequests to twenty-three several individuals, aggregating ninety-three thousand dollars, to four several churches twelve thousand dollars and to the Morris County Children's Home, Parsippany, New Jersey,

eighteen thousand dollars. By the fourth paragraph of the codicil the rest, residue and remainder of his property, both real and personal, was devised and bequeathed to eight several charitable associations to be divided equally between them. Three of the associations named therein were The New York City Mission and Tract Society of the City of New York, The New York Society for Improving the Condition of the Poor of the City of New York, and the Children's Aid Society of the City of New York, the two first named associations being appellants in this case.

June 23d, 1911, the testator executed a second codicil to his will. Therein he again revoked the bequest in the eighteenth subdivision of the first paragraph of his will, also paragraph four of his will. By the second paragraph of the codicil he revoked the appointment of the four executors named in paragraph fifth of his will and in their place and stead nominated and appointed Cheever N. Ely, George P. Vanderpoel and Ambrose E. Vanderpoel executors and otherwise ratified all other provisions of the fifth paragraph of his will, which gave to the executors power to lease and sell real estate, appoint substitutes, and act without security, etc. By the third paragraph he again devised to his brothers and sister the real estate theretofore devised to them in the first codicil. In the fourth paragraph he created a trust of twenty thousand dollars, the income to be paid to Adelaide V. Ely Goddard, and upon her death the principal to become a part of his residuary estate. The fifth paragraph of the codicil contained forty-nine subdivisions and thereunder he gave to forty individuals in forty subdivisions of said paragraph bequests aggregating one hundred seventy-nine thousand dollars. Amongst said beneficiaries were some named in the will, who under this paragraph received additional bequests. By subdivisions forty-one to forty-nine of said paragraph he gave

to churches, nurseries and charitable institutions the sum of one hundred eighty-eight thousand dollars.

By the sixth paragraph of the codicil he gave and bequeathed to three several hospitals fifty thousand dollars each.

By the eighth paragraph of the codicil he ratified and affirmed his will and testament and revoked and annulled any and all codicils to the said will and declared this to be the only codicil to his last will and testament.

The seventh paragraph of the codicil provided as follows:

"*Seventh.* After the payment of all other legacies and of the transfer taxes which may be lawfully imposed upon them, as in my will provided, I give and bequeath to the Children's Aid Society of the City of New York, the sum of one hundred thousand dollars; to The New York Society for Improving the Condition of the Poor, of the City of New York, the sum of one hundred thousand dollars; to The Board of Church Erection of The Presbyterian Church in the United States, the sum of one hundred thousand dollars; and to The New York City Mission and Tract Society, of the City of New York, the sum of one hundred thousand dollars. Provided that the said several sums of one hundred thousand dollars shall each constitute a special endowment fund to be forever called and known as The Ambrose K. Ely Memorial. And provided further, that if my personal estate should be insufficient to fully pay all of the legacies enumerated in my will and the codicil thereto, together with the transfer taxes which may be imposed upon them, I direct that the legacies to the four corporations last above mentioned shall abate *pro rata* or *in toto*, as the necessities of the case may require, before the abatement of the legacies previously provided for in my said will and the codicil thereto."

The trial justice found as matter of fact that the part of the clause above quoted commencing with "And pro-

vided further" to the end thereof was given by the testator to the draftsman of the codicil personally and was gone over by the testator with the draftsman on each of four separate occasions, and testator being asked if it was all right said it was.

An appraisal of the property of the testator made subsequent to his death disclosed the value thereof as follows: Real estate, $492,980.26; personal property, $666,216.84; total, $1,159,197.10.

The trial justice admitted evidence of extrinsic circumstances and made findings thereon, the correctness of which ruling is challenged by certain of the appellants upon this appeal. Treating the evidence of the inheritance by the testator from his brother's estate and the execution of the trust deed as embraced within the ruling made, additional findings of fact were made by the trial justice based upon extrinsic circumstances, in substance as follows: The justice found that the testator since 1901 repeatedly made lists of his personal property, usually as often as every six months; that he went over the items of his personal property and kept in touch with the amount of the same; from time to time secured new valuations from different real estate firms as to the valuation of his real property, and kept informed as to the changes in the value of his personal property; that his investments were changed from time to time because he was giving his property away, a great deal of it in gifts to friends and charities; that Mr. Ely was a bachelor and during his lifetime had given large sums of money to various religious and charitable institutions; that during the month of June, 1911, the testator believed his death to be imminent, and on June 23, 1911, before executing the second codicil the testator devoted much time in preparing memoranda of the legacies to be given therein, computing the aggregate amount of such legacies and estimating the value of his real and personal property; that he had in his possession a complete list of his personal property

other than cash and personal household articles and such list contained the market value as of the 5th day of June, 1911, of the property set forth therein; that while the testator was fixing the amount of the legacies to be given by the proposed codicil he computed the values of his personal property as shown by such list, and the market value of the property set forth therein as of June 5th, 1911, was six hundred thirty-nine thousand eight hundred two dollars. That he also had a list of his real property, which contained his estimated values of the same; that during the period he was engaged in preparing instructions for the drawing of the proposed codicil he computed the aggregate value of said real estate and the value of the real estate not specifically devised was by him estimated at about six hundred thousand dollars; that the amount of indebtedness owing by the testator at the time of his death was $1,179.57.

The trial justice held as matter of law that six several legacies under the will and codicil aggregating $365,000 were invalid. Included therein were legacies of $100,000 each to New York City Mission and Tract Society of the City of New York, The New York Society for Improving the Condition of the Poor of the City of New York, appellants, and the Children's Aid Society of the City of New York, named in the seventh paragraph of the codicil of 1911, and further held that one legacy of $100,000 in said paragraph was valid.

The trial justice determined the identity of certain legatees named in the will and codicil, sustained bequests made to them and found as matter of fact that the testator in using the words "Personal estate" in paragraph seventh of the codicil to his will intended to distinguish between his own estate and that held in trust for his benefit under the trust deed made by him, and intended to charge the payment of legacies given by his will and codicil upon the real property not devised by him, and as conclusions of law that the valid legacies given by the

will of the testator and the codicil thereto are charged upon the real property of which he died seized which was not specifically devised by him; that the power of sale given to the executors of the will was a valid power and should be exercised by them for the purpose of paying the legacies given by the will and the codicil thereto and the transfer and inheritance taxes.

Considering first the admission of evidence of extrinsic circumstances I conclude that the ruling of the trial justice was free from error.

While the personal estate of a testator is the primary fund from which legacies shall be paid (*Taylor* v. *Dodd*, 58 N. Y. 335), "Whether a legacy is charged upon the real estate of the decedent is always a question of the testator's intention. The language of the will is the basis of the inquiry, but extrinsic circumstances which aid in the interpretation of that language, and help to disclose the actual intention, may also be considered." (*McCorn* v. *McCorn*, 100 N. Y. 511, 513 and cases cited.) The same principle is applied in *Bevan* v. *Cooper* (72 N. Y. 317); *Brill* v. *Wright* (112 N. Y. 129); *Briggs* v. *Carroll* (117 N. Y. 288); *Irwin* v. *Teller* (188 N. Y. 25).

The case of *Fries* v. *Osborn* (190 N. Y. 35), relied upon by counsel, is distinguishable from the case at bar. In the *Fries* case the will there considered directed the payment of debts and funeral expenses, appointed an executor, gave to four several individuals five hundred dollars each and to three several beneficiaries three hundred dollars each. The question certified to this court was: "Are the legacies * * * a lien and charge upon his real estate * * *." The action was one of partition. The will did not make reference to real estate, neither was it asserted that the instrument contained ambiguous or contradictory language. This court held that evidence of extrinsic circumstances was inadmissible, as the same could not aid in an interpretation of the language of the will, which was neither obscure nor uncertain.

In the case at bar counsel for the principal appellants argued that the presence of the words "personal estate" in the seventh clause of the codicil of 1911 is evidence of the intention of the testator that legacies under his will and codicil should be payable only from his personal property. That the words "personal estate" as used by the testator are unambiguous. My conclusion is adverse to the two propositions. Having determined that evidence of extrinsic circumstances was properly admitted I will first consider the intention of the testator. Mr. Ely was at one time mayor of the city of New York. He also filled other positions of public trust. While the value of his property on March 1st, 1906, the date of his will, does not appear in the record, an examination of his will and codicils discloses that he was a gentleman of considerable means and extremely charitable. In his will he made specific individual bequests of twelve thousand dollars exclusive of his residuary estate, bequests direct for charitable purposes of forty-four thousand dollars and ultimate charitable bequests of one hundred fifty thousand dollars with a possibility of an additional fifty thousand dollars.

By the first codicil in 1909 he made bequests to four additional churches and to one home for children aggregating thirty thousand dollars. Specific legacies to individuals of ninety-three thousand dollars and the rest and residue of his estate to charitable institutions named therein.

June, 1911, Mr. Ely believed that he was about to die. A letter addressed by him to his nephew under date of June 20th, 1911, indicating his belief that he was then in a dying condition, was received in evidence. June 23d he executed the second codicil to his will in and by which he revoked the codicil of June 11th, 1909. Of the forty different individuals named in the fifth clause of the last codicil twenty-three of them were included in the codicil of 1909, three of the four churches named in the first codicil were given increased bequests and a bequest to the Morris

County Children's Home named therein was increased from eighteen thousand dollars to fifty thousand dollars; then followed a number of bequests to several institutions to which attention has been called. To summarize his will and codicil under consideration the testator provided specific legacies to a large number of individuals in the sum of one hundred ninety-one thousand dollars, a trust fund of twenty thousand dollars, and directly and ultimately for charitable purposes nine hundred and seventy thousand dollars, a marked increase for charity notwithstanding the letter written by the testator to his nephew on June 20th, and the force claimed for the same by some of the appellants. As indicating the benevolence of the testator we should also consider that in addition to the amount of bequests made to individuals one hundred ninety-one thousand dollars and the trust fund of twenty thousand dollars the testator under the trust deed turned over to the trustee securities of the value of $392,588.22, making total gifts made by him to friends and distant relatives of $603,588.22. The only near relatives of the testator were his two brothers, both unmarried, and one sister, married. In common with the testator each of them inherited from the estate of a deceased brother in 1907 upwards of one million dollars and each of them was possessed of independent means.

During the lifetime of testator he made numerous and generous donations to charitable and religious purposes. His debts at the time of his death amounted to merely eleven hundred dollars. He was familiar with the extent and value of his property, both real and personal. The inventory of the same kept by him was revised as late as June, 1911, shortly before he executed the final codicil, and was utilized by him in the preparation of that instrument. In that inventory he estimated his real estate of the value of about six hundred thousand dollars and his personalty at six hundred thirty-nine thousand eight hundred two dollars, a total of one million two hundred

thirty-nine thousand eight hundred two dollars. By his will and codicil he provided for a distribution of one million one hundred eighty-one thousand dollars leaving of his estimated estate fifty-eight thousand eight hundred two dollars applicable to the payment of debts of one thousand one hundred seventy-nine dollars fifty-seven cents, inheritance taxes and expenses of administration. By the sixth clause of his final codicil he gave fifty thousand dollars to each of three several hospitals, a total of one hundred fifty thousand dollars, to be used to endow as many beds in each as would be permissible, to be designated by his brothers and sister and their direct descendants from time to time. By the seventh clause of the same codicil the four several bequests of one hundred thousand dollars each to charitable and religious purposes were to constitute a special endowment fund to be forever called and known as the "Ambrose K. Ely Memorial."

This brief and necessarily incomplete narrative of the character and beneficent disposition of the testator renders incredible the suggestion that the testator intended that the beneficiaries named by him in his will and codicil should discover upon his death that he possessed personalty of the value of only six hundred sixty-six thousand two hundred sixteen dollars eighty-four cents from which he intended his representatives should pay expenses of administration and inheritance taxes, together with legacies aggregating one million one hundred eighty-one thousand dollars, and to die intestate as to his real estate which would descend to his sister and two brothers already of independent means. The circumstances in this case seem to render improbable a conclusion that the testator, aware as he was of his serious condition, should in the closing hours of a life well spent contemplate an act which would not alone reflect unfavorably upon the good name he had personally borne to advanced years, but likewise upon the memory of his deceased brother. Far more reasonable is the presumption that the testator,

mindful of the inheritance he had received from the estate of his deceased brother, cognizant of the fact that he had made generous provision for his friends and distant relatives, that his brothers and sister were amply provided for financially, that he had immortalized their names through the endowment of hospitals, intended to perpetuate the memory of his deceased brother and benefactor through channels which would secure comfort and relief to fellow-man.

My conclusion is that it was the intention of the testator that his entire estate should be devoted to the payment of the objects of his bounty. In view of that determination, the presence of the words " personal estate " in the seventh clause of the codicil of necessity gives rise to an ambiguity which required the justice at Trial Term to resort to extrinsic evidence to aid in an interpretation of the will and codicil in connection with the general scheme of the instruments. Ordinarily the words " personal estate " have a well-understood meaning and seldom require resort to extrinsic evidence to explain their significance. As used by the testator in this case we have a fair illustration of the value and competency of such evidence. If the words " personal estate " are to be literally construed as urged by counsel, the paramount intention of the testator will be defeated. In the seventh clause of the codicil where the expression " personal estate " is found the testator used the following language expressing his intention: " After the payment of *all other legacies* and of the transfer taxes which may be lawfully imposed upon them as in my will provided, I give and bequeath," etc. Giving due weight to the language quoted, we find the intention of the testator that all legacies in his will provided for, prior to the legacies given under the seventh clause, shall first be paid in full, thus an ambiguity between the language quoted and the phrase " personal estate " in the same clause. If payment of such legacies was to be

made only from personalty, they could not be paid in full, and the expressed desire of the testator that full payment of the same should be made would be impossible of accomplishment. Interpreting the words "personal estate" in connection with the language quoted and the general scheme of the will, it is evident that the testator used the expression to indicate his intention that his entire estate should be converted into money for the payment of legacies, that in the event that his estate when thus converted into money should be inadequate to pay legacies in full, they should abate in the order prescribed by him in the seventh clause of the codicil. That such was his intention is further apparent by reason of the power to lease or sell real estate conferred upon the executors by the terms of the will. The only purpose for which such power could be exercised by the executors of the will in question was for the payment of legacies, otherwise the the grant of power was meaningless. If the argument of counsel for some of the appellants were to prevail the result would be a determination that the testator intended to die intestate as to real estate of the value of approximately one-half million dollars, or upwards of forty-two per cent of his entire estate, which real estate would descend to his brothers and sister. In the first codicil of 1909, the testator devised to them specific real estate in New York and New Jersey. In the second codicil he again devised to them the same real estate. That act was inconsistent with an intention that they should succeed to his real estate in its entirety. The testator and the draftsman of the codicil understood the language necessary to be employed to make a devise of all real estate owned by the testator as clearly as they appreciated the language necessary to devise specific real estate. The testator chose to make a limited rather than a general devise. He was conscious of his condition and realized that he was soon to pass away. In that presence and amidst such surroundings it is improbable that he adopted the

expression "personal estate" intending thereby that his brothers and sister should take specific real estate by devise and all remaining real estate by inheritance.

By the fourth paragraph of the final codicil he created a trust fund, the income therefrom to be paid to Adelaide V. Ely during life and upon her death the principal to become a part of "my residuary estate." As the will and final codicil do not contain a residuary clause it would seem singular that the expression "residuary estate" should be used by the testator unless he contemplated by the entire scheme of his will that his real estate should by virtue of the power of sale to the executors be converted into money and the proceeds of his entire estate utilized to carry out the purposes of the same.

An examination of the will and codicil in connection with the circumstances to which I have called attention leads me to the alternative of believing that the testator knowing as he did the extent and value of his estate, that his personalty was insufficient to pay the bequests made by him even excluding the bequests in the seventh clause of the codicil, intended that his action under the solemnity of approaching death should not be in vain, that his memory should not be enshrouded in a cloud of criticism, but rather should be enduring and in keeping with the noble purposes which marked his career through life; that every bequest made by him should be paid in full, and that the real estate of which he died seized should be applicable to the payment of the same.

The trial justice held that bequests of five thousand dollars to Ely Cemetery, ten thousand dollars to West Side Nursery, and one hundred thousand dollars to Children's Aid Society were invalid. No appeal by the several named parties was taken to this court.

The appeal by the New York City Mission and Tract Society is from so much of the judgment as decreed the bequest of one hundred thousand dollars to it under the seventh clause of the will invalid. The society was organ-

ized under chapter 63 of the Laws of 1866, which act was amended by chapter 27, Laws of 1870, chapter 418, Laws of 1890, and chapter 505, Laws of 1896. By the act of incorporation the society, which is religious in its purposes, was declared capable of taking by devise any estate real or personal subject to any provisions of law in relation to devises and bequests by wills. The final codicil, which contains the bequest to the society named, was executed eight days prior to the death of Mr. Ely. Section 19, Decedent Estate Law (Cons. Laws, chap. 13), in effect at the time of the decease of testator, reads as follows:

"No person leaving a wife, or child, or parent, shall devise or bequeath to any institution or corporation formed under laws of eighteen hundred and forty-eight, chapter three hundred and nineteen, more than one-half of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid, to the extent of such one-half, and no such devise or bequest shall be valid, in any will which shall not have been made and executed at least two months before the death of the testator."

As the power of the society to take real or personal property was subject to any provision of law in relation to devises and bequests by will, the section of the Decedent Estate Law above quoted was applicable to the society in question, and the bequest having been made within two months before the death of the testator was invalid. In *Kerr* v. *Dougherty* (79 N. Y. 327, 340) this court held a bequest to this society invalid and later cases are to the same effect. (*Stephenson* v. *Short*, 92 N. Y. 433.)

Counsel for the society appellant asserts that the provision of the statute quoted "did not obliterate the bequest to the society as if it had never existed nor did it give to the testator's relatives any direct share in his estate. All that it gave them was a privilege to defend

against the enforcement of the legacy when the time for enforcement should arrive." The society was a creature of the legislature, its right to acquire property by devise or bequest was limited by the Decedent Estate Law. By that statute the bequest was declared invalid, and the society prohibited from receiving it.

Even assuming the premise of appellant that the parties interested in the estate of Smith Ely were privileged to elect to waive the right to insist upon the invalidity of the bequest, they have not so elected. The will and codicil were admitted to probate August 15th, 1911. This action was commenced May 6th, 1912. The complaint alleged the corporate existence of the society and quoted from the act of the legislature the provisions of the charter relating to its capacity to take by will. The prayer for relief asked that the court determine the validity of the bequests contained in the will. The defendants Edwin A. Ely, William H. Ely and Maria L. Vanderpoel, the brothers and sister of the testator, in their answer, affirmatively alleged the invalidity of the bequest to the society and prayed that the bequest be declared invalid. The society answered but did not question the power of the court to determine the validity of the will or codicil; on the contrary it prayed the judgment of the court that the testator intended that the gift made to it should be paid from his estate real and personal, and that the real estate was charged with the payment thereof, and that such gift was valid.

The parties interested in the estate have not waived any rights thereunder or consented in any manner to the validity of the bequest made. On the contrary they are asserting the invalidity of the same and the society has been afforded its day in court on that issue. The validity of the bequest was not an issue on the probate of the will and could not be determined at that time unless the will had been probated and a construction prayed for. The parties are not estopped by the probate proceedings from

attacking the validity of the bequest. (*Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 N. Y. 525, 539.)

By chapter 857, Laws of 1911, which became a law July 29th, 1911, the provision of the Decedent Estate Law, above referred to, was repealed. The testator died July 1, 1911, nearly one month before the repeal of the law. We concur with the courts below that the validity of the bequest to the society is to be determined as of the date of the death of the testator, and, as the law inhibiting the society from taking such bequest was in force at the time of the death of testator, the bequest was invalid.

Counsel for the society further argued that, assuming that the legacy to the society in the seventh clause of the codicil executed in 1911 was invalid under the provisions of the Decedent Estate Law (Section 19), nevertheless the society would be entitled under the principle of "Dependent relative revocation" to receive at least so much of the legacy given it by the codicil as would equal the amount given it by the codicil of 1909.

The testator by the fourth clause of the codicil of 1909 devised and bequeathed his residuary estate, real and personal, to eight several charitable associations, amongst which was the society in question, the Children's Aid Society, and the New York Society for Improving the Condition of the Poor, three of the four associations named as legatees in the seventh clause of the codicil of 1911, which three legacies have been adjudged invalid. Counsel asserts that it was the intention of the testator by the codicil of 1911 to limit to one hundred thousand dollars the amount of the gift to the society, which it had been his fixed intention for years prior to his death to make, and, the bequest in the codicil of 1911 having been made with the intention to replace the bequest in the codicil of 1909, the later gift failing, the plain intent of the testator not to die intestate (*pro tanto*) will be effectuated by reinstating the former gift in the codicil of 1909 and thereby preventing the revocation in the codicil of

1911 from taking effect. In support of his argument he refers to three findings of fact made by the trial justice as follows:

" *Fifty-sixth.* That said Smith Ely did not in fact intend wholly to revoke by said codicil of the 20th day of June, 1911, the said codicil of the 11th day of June, 1909, but intended thereby only to modify said codicil of the 11th day of June, 1909.

" *Fifty-seventh.* That said Smith Ely in and by the codicil dated the 20th day of June, 1911, did not in fact intend to increase, but did intend to diminish the legacies contained in said codicil of the 11th day of June, 1909, to the said defendants The Children's Aid Society, New York City Mission and Tract Society and New York Association for Improving the Condition of the Poor.

" *Fifth-eighth.* That said codicil, dated the 23rd day of June, 1911, was made by said Smith Ely for the express purpose of reducing the amount given to charities in and by his said will and said codicil of the 11th day of June, 1909."

The foregoing findings of fact were made by the trial justice at the request of defendant, the Children's Aid Society. The justice refused to find as conclusion of law that the codicil of 1911 did not revoke the codicil of 1909; that the latter codicil as modified by the codicil of 1911 is to be taken as part of the will of the testator, and that the bequest to the aid society was valid. No appeal to this court was taken by that society.

The New York Association for Improving the Condition of the Poor requested the trial justice to find as matter of law: " The legacy of $100,000 to the New York Association for Improving the Condition of the Poor is valid as to such amount thereof as on a proper accounting would be found to have been payable to it under the codicil made by Smith Ely dated June 11, 1909, if such codicil had not been revoked, and such legacy of $100,000 is to be reduced accordingly," which was refused and

exception thereto and to the conclusion that the legacy to that association was invalid were duly filed. An appeal has been taken by that society to this court, and the same question in substance is presented by counsel for that association.

The New York City Mission and Tract Society did not make requests to find facts or conclusions of law or file exceptions to findings as made. It has appealed from so much of the judgment below as affirmed the judgment of the Trial Term, which adjudged the legacy of one hundred thousand dollars given to it as invalid.

The doctrine of "dependent relative revocation" was applied in numerous cases in England following the enactment of the Statute of Frauds in 1666 (29 Chas. II, 3) and the statute of 1837 (1 Vic. 26) entitled "An act for the amendment of the laws with respect to wills." The decisions may be classified generally as involving the question of revocation where there was a failure of execution of a second instrument as required by law, thus rendering the same inoperative even as a revocation of the first instrument, or where revocation was asserted by reason of alleged inconsistency between two instruments, and, again, and comprising the greater number of adjudications where it was argued that obliteration, erasures in, or cancellation of a will in whole or in part did not operate as a revocation of the same where the act of the testator was dependent upon or accompanied with an ineffectual attempt to make gifts in the new instrument, likewise in cases where the devise in two wills was for the same use though different trustees were named, and cases of accident.

The principles involved and determined in that line of cases are not analogous to the question presented in the case at bar. Given a case of attempted revocation by cancellation, alteration or obliteration of a will in whole or in part by a testator, an examination of the instrument or instruments will immediately disclose that the act is

one of uncertainty, or, as spoken of in some of the cases, is an "equivocal act," and a *prima facie* intention of the testator to alter or revoke the instrument manifest. The intention of the testator in a performance of that act at once becomes material and the presumption of an intention to alter or revoke is subject to be rebutted by evidence explanatory or destructive of the same, or tending to establish accident or mistake. The actual intention of the testator determined, the same will in such case be decreed by the court.

My examination of the cases leads me to the conclusion that a distinction exists between an attempted revocation where the question of the intention of the testator in the cancellation or obliteration of an instrument is a material circumstance to be considered, or where by accident or mistake an earlier instrument is attempted to be canceled or changed, and revocation by express declaration in writing contained in an instrument executed with all the formalities required by statute when the revocatory clause is not made dependent upon the validity of a new gift made in the same instrument or limited by language indicating the intention of the testator to preserve in whole or in part bequests embodied in a former codicil or instrument.

In the codicil under consideration the declaration of revocation was complete and not dependent upon the validity of the bequests made therein which upon the face of the instrument were unambiguous; the three associations, legatees, were inhibited from taking the specific bequests because of the statute above quoted, and the gift to each of them failed not by reason of any defect in the instrument, but solely in consequence of matter *dehors* the instrument, and the courts are powerless in such a case to revive or reinstitute the earlier bequests to them contained in the codicil of 1909. The decisions in England and in various jurisdictions in this country are to that effect. (*Roper* v. *Radcliffe,* 10 Mod. Rep. 231 [1795];

*Ellis* v. *Smith*, 1 Ves. Jr. Ch. 11 [1754]; *Tupper* v. *Tupper*, 1 Kay & Johnson, 665 [1855]; *Nevill* v. *Boddam*, 28 Beavan, 554 [1860]; *Quinn* v. *Butler*, L. R. [6 Eq. Cases] 225 [1868]; *Price* v. *Maxwell*, 28 Pa. St. 23; *Lutheran Congregation Appeal*, 113 Pa. St. 32; *Nelson's Estate*, 147 Pa. St. 160; *Burns* v. *Travis*, 117 Ind. 44; *Hairston* v. *Hairston*, 30 Miss. 276; *Vining* v. *Hall*, 40 Miss. 83; *James* v. *Marvin*, 3 Conn. 576; *Carpenter* v. *Miller*, 3 W. Va. 174; *Colvin* v. *Warford*, 20 Md. 357.)

But few decisions are to be found in this state (*Canfield* v. *Crandall*, 4 Demarest, 111; *Matter of Benedict*, 32 N. Y. S. R. 139), though counsel has directed our attention to two decisions in this court (*Austin* v. *Oakes*, 117 N. Y. 577; *Matter of Farmers' L. & T. Co.*, 138 App. Div. 121; affirmed on opinion below, 199 N. Y. 569) as sustaining their argument.

In the latter case the testatrix by the second clause of her will gave to her executors one hundred thousand dollars in trust to apply the income to the use of her niece, to whom she gave a testamentary power of appointment of the remainder, and bequeathing it, in the event of a failure on the part of the niece to exercise the power, to her child or children equally; should the niece die intestate without leaving issue her surviving, it should fall into and become a part of the residuary estate. By the twentieth or residuary clause of the will the testatrix devised and bequeathed the residue of her estate to two charitable associations.

Within two months of the death of the testatrix she executed a codicil in and by which she revoked the twentieth or residuary clause of her will and by the ninth clause of the codicil provided that the rest and residue of her estate including "all bequests, bequests in trust and beneficial provisions hereinbefore contained (*excepting only the provisions in trust for my niece in the clause of my said will entitled second*) which bequests cr provisions may lapse or fail, so that were it not for this

clause of my will and codicil I should die intestate as to the same or any part of the same I do give and bequeath the same to my niece Alice Eleanor Moffat, *absolutely.*"

The same clause further provided: " As to the said provision in trust in favor of my niece in said second clause of my will contained I do provide that in case, she shall not survive me, or having survived me shall die leaving no issue her surviving and having .made no appointment as therein allowed and provided, *that the trust fund shall pass under and be distributed as provided by said twentieth clause (now revoked) of my said will which in such event and to the extent of said trust fund only I do revive and reinstitute as a portion of my last will and testament.*"

The question was as to whether the respondents took under this clause of the codicil or the residuary clause of the will. The niece died intestate without issue, and the court held that the twentieth or residuary clause of the will was revived and reinstituted so far as a disposition of the *remainder* of the one hundred thousand dollars trust fund was concerned, and the respondents would take thereunder. In that case the revocatory clause was limited by language expressed therein by the testator indicating her intention to preserve the bequest of the remainder of the trust fund to the respondents, the charitable associations, upon the contingency stated. The case cited appears to support the distinction heretofore made rather than the argument of counsel, and the decision is akin to the earlier cases in this court. (*Matter of Willets,* 112 N. Y. 289; *Redfield* v. *Redfield,* 126 N. Y. 466; *Viele* v. *Keeler,* 129 N. Y. 190.)

The case of *Austin* v. *Oakes* (117 N. Y. 577, 589) is distinguishable from the present case. In that case the testator gave to his wife a life estate in all of his property, remainder to six children, counting two grandchildren of a deceased son as one, an equal division of that remainder among the six, unless his wife should

by will make an apportionment in other proportions as she was authorized to do; if one of the beneficiaries should predecease the widow his share to such issue. By the terms of a codicil the testator provided that upon the death of his wife the share of his estate to go to J., a son, and C., a grandson, should be held in trust for them during their lives, the principal upon their respective deaths to their issue, if any, if none then to fall into his general estate, or as his said wife should by will direct.

The widow in 1874 by a will which in terms referred to the will of her deceased husband, made an apportionment of the remainder amongst the five children then living and the two grandchildren of a deceased son, and then provided that in the event of the death of J., the son, and C., the grandson, without issue a disposition of the remainder.

The grandson died in 1883, and thereafter the testatrix executed a codicil to her will in and by which she gave upon her death to two grandchildren, who were not named as beneficiaries in the will of the testator, the share of the trust estate appointed to C. Neither the wills or codicils of the testator or testatrix contained a revocatory clause. Judge FINCH stated that the "inquiry is whether the power of appointment recited in the testator's codicil is a new and distinct and separate power, adequate to sustain the appointment made, or not so adequate and merely a reference to the one already given in the will itself," and the court held in substance that while the testatrix was empowered to make an apportionment, the exercise of the power was limited to the beneficiaries named in the will of her husband; that as by the codicil to her will she had exceeded the power given her in the bequest to the Oakes children, the codicil containing (solely) that bequest was void. From my viewpoint the case is not applicable to the question under consideration.

The New York Association for Improving the Condition

of the Poor was incorporated under the provisions of chapter 319 of the Laws of 1848, and for the reasons heretofore stated in view of the provisions of the Decedent Estate Law the bequest to that corporation was invalid.

The bequest to the " Fresh Air Home for Crippled Children known as Sea Breeze at Coney Island " was held by the courts below to be invalid. The trial justice found that the testator intended the gift to be to the Hospital for Crippled Children at Coney Island, New York, part of the work known as " Sea Breeze," which is affiliated with the New York Association for Improving the Condition of the Poor.

The hospital at Sea Breeze is an unincorporated charity managed by boards and officers of the New York Association for Improving the Condition of the Poor with the aid of a medical advisory board attached to the hospital. " Sea Breeze " receives and spends its own money. The New York Association is the custodian of the funds and the accounts are kept by that association. The Sea Breeze Hospital has been a valuable asset to the association for the purposes of publicity and soliciting of subscriptions especially during the summer season. As characterized by the vice-president of the association, Sea Breeze " was always an offshoot of the Association and always a demonstration and experiment." The bequest to " Sea Breeze " was absolute, not in trust, and was in effect a bequest to the association which was incapable of taking; neither can the bequest be sustained as one to an unincorporated voluntary association. (*Fralick* v. *Lyford*, 107 App. Div. 543; affirmed, 187 N. Y. 524; *Mount* v. *Tuttle*, 183 N. Y. 358.)

The bequest to Overlook Hospital was sustained by the courts below. The legacy was fifty thousand dollars to the Overlook Hospital of Summit, New Jersey, to endow in perpetuity as many beds therein as may be permitted to be used by such persons as may be designated from

time to time by the brothers and sister of the testator and their direct descendants. The trial justice found that the hospital named was neither incorporated nor was it an unincorporated association; that for several years prior to the death of Mr. Ely, the defendant William H. Lawrence conducted the hospital at Summit, New Jersey, known as Overlook Hospital, which was the institution intended and designated by the testator; that said hospital was widely known to the public and the only hospital of that name in the state of New Jersey; that it was conducted at the expense of the defendant Lawrence for the benefit of all classes of persons who might be in need of medical or surgical treatment without regard to race, creed or color and free of charge to those unable to pay therefor; that it consisted of three buildings wherein are maintained public and private wards, a dispensary, ambulance service and training school for nurses; that employed therein are a corps of physicians and surgeons and trained nurses, and treatment was afforded annually to about two thousand patients, of whom about three hundred defray the cost of their treatment and one hundred and fifty were paid for by various charitable organizations; that in December, 1912, the hospital was incorporated under the laws of New Jersey, and was empowered to maintain beds, etc., and to care for all proper and deserving cases. He also found its by-laws provided amongst other things that free beds in the wards may be endowed in perpetuity at an annual cost of maintenance of not less than one thousand dollars; that at the time of the death of the testator the law of New Jersey recognized and still recognizes the principle of the English statutes relating to charitable uses as being in force in that state; that gifts in perpetuity for charitable uses are not to be defeated on account of the indefiniteness of the beneficiaries or because there be no trustee appointed capable of executing the trust.

I am of opinion that the legacy in question created a

trust for charitable uses, and under the laws of New Jersey, as well as under the laws of this state if no trustee competent to take had been named the legacy would not have failed. The opinion of the Appellate Division in this case, so far as the bequest to the hospital in question is concerned, has treated of the subject and called attention to the numerous decisions in this state controlling the same and in its conclusions as to the validity of this trust we concur.

The judgment should be affirmed, with costs to the plaintiff and to the several successful respondents who filed briefs in this court payable out of the estate.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDE-BACK and CARDOZO, JJ., concur.

Judgment affirmed.